UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| **LISA M.F. KIM, et al.,** | : | |
| *Plaintiffs,* | : | |
| | : | |
| vs. | : | Case No. 1:21-cv-655-DKC |
| | : | |
| **BOARD OF EDUCATION OF** | : | |
| **HOWARD COUNTY,** | : | |
| *Defendant.* | : | |
| | : | |

# DEFENDANT'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION .............................................................................................................1

BACKGROUND ...............................................................................................................3

   A.  Statutory and Factual Background...........................................................................3

   B.  Procedural Background ............................................................................................6

LEGAL STANDARD ........................................................................................................6

ARGUMENT.....................................................................................................................7

   I.  Plaintiffs fail to state a claim under the Equal Protection Clause........................7

      A. The Equal Protection Clause's voting safeguards are inapplicable to non-elective offices..........................................................................................................9

      B. The Student Member position is a non-elective office....................................12

      C. To the extent that the Student Member position can be considered elective, it does not violate any of the Equal Protection Clause's voting safeguards. ......................................................................................................18

         1.  One-person, one-vote principle .................................................................18

         2.  Vote denial...................................................................................................21

         3.  Franchise expansion....................................................................................24

   II.  Plaintiffs' equal-protection claims are untimely....................................................26

   III.  Plaintiffs fail to state a free-exercise claim because § 3-701(f) is a neutral, generally applicable law. .........................................................................................28

CONCLUSION ...............................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akina v. Hawaii,*
   141 F. Supp. 3d 1106 (D. Haw. 2015) ............................................................23

*Am. Life League, Inc. v. Reno,*
   47 F.3d 642 (4th Cir. 1995) ..........................................................................29

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................6

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................6

*Belmora LLC v. Bayer Consumer Care AG,*
   987 F.3d 284 (4th Cir. 2021) ........................................................................26

*Bowman v. Jack Cooper Transp. Co.,*
   399 F. Supp. 3d 447 (D. Md. 2019) ................................................................7

*Brown v. Bd. of Comm'rs of City of Chattanooga,*
   722 F. Supp. 380 (E.D. Tenn. 1989) ............................................................25

*Butts v. Aultman,*
   953 F.3d 353 (5th Cir. 2020) ........................................................................11

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
   508 U.S. 520 (1993) ......................................................................................29

*City of Mobile v. Bolden,*
   446 U.S. 55 (1980) ........................................................................................19

*Collins v. Town of Goshen,*
   635 F.2d 954 (2d Cir. 1980) ...................................................................11, 25

*Costello v. United States,*
   365 U.S. 265 (1961) ......................................................................................27

*Cunningham v. Municipality of Metro. Seattle,*
   751 F. Supp. 885 (W.D. Wash. 1990) .....................................................10, 11

*DelCostello v. Int'l Bhd. of Teamsters,*
   462 U.S. 151 (1983) ......................................................................................26

*Emp't Div., Dep't of Human Res. of Or. v. Smith,*
   494 U.S. 872 (1990) ......................................................................................28

*Evenwel v. Abbott,*
   136 S. Ct. 1120 (2016) ..................................................................................19

*Gaffney v. Cummings,*
  412 U.S. 735 (1973)................................................................23

*Goines v. Valley Cmty. Servs. Bd.,*
  822 F.3d 159 (4th Cir. 2016)........................................................7

*Goodall ex rel. Goodall v. Stafford Cty. Sch. Bd.,*
  60 F.3d 168 (4th Cir. 1995).........................................................29

*Gregory v. Ashcroft,*
  501 U.S. 452 (1991)................................................................21

*Hadley v. Junior Coll. Dist. of Metro. Kansas City,*
  397 U.S. 50 (1970)....................................................8, 9, 10, 16

*Hines v. S.C. Dep't of Corr.,*
  148 F.3d 353 (4th Cir. 1998)........................................................29

*Holt Civic Club v. City of Tuscaloosa,*
  439 U.S. 60 (1978)................................................................25

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.,*
  304 F.3d 829 (9th Cir. 2002).......................................................26

*Katzenbach v. Morgan,*
  384 U.S. 641 (1966)................................................................25

*Kramer v. Union Free Sch. Dist.,*
  395 U.S. 621 (1969)............................................................8, 21

*Locklear v. N.C. Bd. of Elections,*
  514 F.2d 1152 (4th Cir. 1975)..................................................21, 22

*Malkani v. Clark Consulting, Inc.,*
  727 F. Supp. 2d 444 (D. Md. 2010)..................................................7

*Mixon v. Ohio,*
  193 F.3d 389 (6th Cir. 1999)..................................................11, 24

*PBM Prods., LLC v. Mead Johnson & Co.,*
  639 F.3d 111 (4th Cir. 2011).......................................................26

*Rosenthal v. Bd. of Educ. of Cent. High Sch. Dist.,*
  385 F. Supp. 223 (E.D.N.Y. 1974)..............................................10, 15

*Rucho v. Common Cause,*
  139 S. Ct. 2484 (2019) .............................................................8

*Sailors v. Bd. of Educ. of Kent Cty.,*
  387 U.S. 105 (1967)...........................................................passim

*Simkins v. Gressette,*
    631 F.2d 287 (4th Cir. 1980) ...................................................................27

*Spahos v. Mayor & Councilmen of Town of Savannah Beach,*
    207 F. Supp. 688 (S.D. Ga. 1962) ..................................................... 8, 25

*Spiegel v. Bd. of Educ. of Howard Cty.,*
    No. C-13-CV-20-000954, slip op. (Md. Cir. Ct. Howard Cty. Mar. 25, 2021) ......... 16

*Vander Linden v. Hodges,*
    193 F.3d 268 (4th Cir. 1999) ...................................................................10

*Wesberry v. Sanders,*
    376 U.S. 1 (1964) ...................................................................................19

*White v. Daniel,*
    909 F.2d 99 (4th Cir. 1990) .....................................................................27

## Constitutional Provisions

Md. Const. art. I, § 1 .................................................................................13

Md. Const. art. VIII, § 1 .............................................................................3

Md. Const. art. XV, § 7 .............................................................................14

## Statutes & Ordinances

2007 Md. Laws 3887 ............................................................................ 4, 27

Md. Code, Crim. Proc. § 15-202(a)(7) *et seq.* ........................................18

Md. Code, Educ. § 2-202(b)(4) ...............................................................17

Md. Code, Educ. § 3-103 ..........................................................................3

Md. Code, Educ. § 3-701(a)(1) ...............................................................12

Md. Code, Educ. § 3-701(a)(1)(i) .............................................................4

Md. Code, Educ. § 3-701(a)(1)(ii) ............................................................4

Md. Code, Educ. § 3-701(a)(2)(i) .............................................................4

Md. Code, Educ. § 3-701(a)(2)(ii) ............................................................4

Md. Code, Educ. § 3-701(d)(3) *et seq.* ..................................................15

Md. Code, Educ. § 3-701(f)(1) ............................................................ 4, 12

Md. Code, Educ. § 3-701(f)(2) .................................................................14

Md. Code, Educ. § 3-701(f)(3)(i) .......................................................... 5, 14

Md. Code, Educ. § 3-701(f)(3)(iii) ...........................................................13

Md. Code, Educ. § 3-701(f)(4) ................................................................15

Md. Code, Educ. § 3-701(f)(7) .............................................................4, 5

Md. Code, Elec. Law § 8-301(a)(1) ...........................................14, 20, 28

Md. Code, Local Gov't, § 30-104(a)(1) ...............................................18

**Rules & Regulations**

Fed. R. Civ. P. 12(b)(6) ...........................................................................6

Fed. R. Evid. 201(b)(2) ...........................................................................7

**Legislative History**

*Hearing on H.B. 513 Before H. Comm. on Ways and Means*, 2007 Leg., 423rd Sess. (Md. 2007)................................................................................ 3, 23

Md. House of Delegates Roll Call Vote, 2007 Sess. H.B. 513 (Mar. 8, 2007) ...............4

Md. Senate Roll Call Vote, 2007 Sess. H.B. 513 (Apr. 6, 2007).........................................4

**Administrative and Executive Materials**

Letter from Douglas F. Gansler, Att'y Gen. of Md., to Martin O'Malley, Governor of Md. (Apr. 19, 2007)................................................................17

Md. Att'y Gen. Op. No. 80-030, 1980 WL 127893 (Mar. 12, 1980)..............................16

**Other Authorities**

Board of Education of Howard County, *Meeting Agenda Item* (June 11, 2020), https://perma.cc/C6XJ-P6PD.................................................. 14, 28

Clara Niel, *Takoma Park Is One of Five Cities Where Minors Can Vote. And Young Voters Are Turning Out*, The Diamondback (Oct. 1, 2020), https://perma.cc/3VRC-6VKN ................................................................26

Press Release, Public Interest Legal Foundation, PILF Clients Demand End to Howard County, MD School Board's Election Scheme that Lets Children Vote for School Board (Mar. 16, 2021), https://perma.cc/R7LM-YMR6 ................... 2, 13

Rachel Chason, *Non-Citizens Can Now Vote in College Park, Md.*, Wash. Post (Sept. 13, 2017), https://perma.cc/VBW2-8LN4 ................................................26

## INTRODUCTION

The Maryland General Assembly has created student positions on the State Board of Education as well as county boards of education throughout the state. These positions are intended to give students a voice on the policies that affect their school lives and to provide students civic education by involving them in the actual process of governance. The Board of Education of Howard County is among the bodies on which the General Assembly has created a position reserved for a public-school student. Through this lawsuit, Plaintiffs hope to overturn that policy decision and silence Howard County Public School System (HCPSS) students.

Plaintiffs allege that § 3-701(f) of the Maryland Education Article violates the Fourteenth Amendment's Equal Protection Clause and the First Amendment's Free Exercise Clause by allowing HCPSS students in grades six through eleven to participate in the selection of the Student Member to the exclusion of Howard County residents who do not attend HCPSS schools. Plaintiffs' free-exercise claim is easily dismissed because § 3-701(f) is a hornbook example of a neutral, generally applicable law to which the Free Exercise Clause's safeguards do not apply. The main focus of the Complaint is Plaintiffs' equal-protection claims. Those claims also are unavailing.

The Complaint's foundational error is that it presumes that the Student Member position is an elective office, when it clearly is not. Adult registered voters participate in elections, not minor students. Elections in Maryland are governed by

1

the state's Election Law Article, not the HCPSS school policies that govern the selection of the Student Member.   Plaintiffs' counsel said it best in a press release: the process for selecting the Student Member is not "a real government election."[1] Because the Equal Protection Clause's voting safeguards do not apply to non-elective offices, Plaintiffs' equal-protection claims should be dismissed.

Plaintiffs equal-protection claims also fail because they fail to state a claim even if one assumes that the Student Member position is an elective office.   Section 3-701(f) does not deny a single adult resident of Howard County the right to vote in Board elections.   To the contrary, the statute preserves a dominant voice on the Board for Howard County's adult residents, who alone determine the selection of seven of the Board's eight members.   Section 3-701(f) reflects the General Assembly's deliberate choice to give HCPSS students a voice in shaping the policies that affect their school lives by providing them a single seat with carefully circumscribed voting power on a Board otherwise filled by adult residents of Howard County.   Plaintiffs' real objection is not that HCPSS students wield *disproportionate* power on the Board.   In truth, they object that HCPSS students exercise any power at all.   This Court should dismiss this case with prejudice and decline Plaintiffs' invitation to second-guess the General Assembly's decision to empower HCPSS

---

[1]  Press Release, Public Interest Legal Foundation, PILF Clients Demand End to Howard County, MD School Board's Election Scheme that Lets Children Vote for School Board (Mar. 16, 2021), https://perma.cc/R7LM-YMR6 [hereinafter PILF Press Release].

students by giving them a voice on the Board.

## BACKGROUND

### A.      Statutory and Factual Background

The Maryland Constitution mandates that the Maryland General Assembly "establish throughout the State a thorough and efficient System of Free Public Schools."  Md. Const. art. VIII, § 1.  Pursuant to that provision, the General Assembly has established local boards of education in each county.   Md. Code, Educ. § 3-103.   In most counties, the General Assembly has reserved one or more school-board seats for high-school students.   Whether student board members can vote on substantive issues varies by county.   Plaintiffs challenge § 3-701(f) of the Maryland Education Article, which establishes a Student Member position with limited voting power on the Howard County Board.

Section 3-701(f) is the product of a twenty-year, student-led effort.   In 1987, a HCPSS student unsuccessfully pushed for the creation of a student position on the Board.  *Hearing on H.B. 513 Before H. Comm. on Ways and Means*, 2007 Leg., 423rd Sess. 1 (Md. 2007) (statement of Joshua L. Michael) (attached as Exhibit 1).   The Board created a nonvoting student position as a compromise.  *Id.*  Two decades later, a former student member of the State Board of Education and a former nonvoting student member of the Howard County Board spearheaded a renewed legislative push for a voting position.  *Id.* at 1–2.   The students' advocacy resulted in the enactment of § 3-701(f) by a unanimous vote in the House of Delegates and a 42-4 vote in the

Senate.[2]   2007 Md. Laws 3887 (codified as amended at Md. Code, Educ. § 3-701).

Since 2007, the Howard County Board has been an eight-member body. Seven of the positions are occupied by "elected members," who are chosen by Howard County voters in elections governed by Maryland's Election Law Article. Md. Code, Educ. § 3-701(a)(1)(i).   Five of the Elected Members represent "councilmanic districts" within Howard County and are "elected by the voters of [each] district."   *Id.* § 3-701(a)(2)(i).   The other two are "at large" Members who are "elected by the voters of the county" as a whole.   *Id.* § 3-701(a)(2)(ii).   The final position on the Board is filled by the "student member," a high-school junior or senior enrolled in a HCPSS school.   *Id.* §§ 3-701(a)(1)(ii), (f)(1).

Like the at-large Elected Members, the Student Member represents all Howard County residents.   Compl. Ex. A, at 4 (stating that the Student Member "represents students, staff, parents, and others in the community by presenting a student perspective on matters that come before the Board").   But unlike the Board's Elected Members, the Student Member exercises limited voting power, as he or she is prohibited from voting on fourteen different categories of subject matter, including the appointment and salary of the county superintendent; staff and student discipline; and—contrary to what Plaintiffs allege—budgetary matters.[3]   Md. Code, Educ.

---

[2]  *See* Md. Senate Roll Call Vote, 2007 Sess. H.B. 513 (Apr. 6, 2007); Md. House of Delegates Roll Call Vote, 2007 Sess. H.B. 513 (Mar. 8, 2007).

[3]  Plaintiffs also object that Howard County residents who attend private schools or

§ 3-701(f)(7); Compl. ¶ 53.

A multi-step process governs the selection of the Student Member of the Howard County Board.   In January of each year, HCPSS students may apply to serve as the Student Member, and those applications are reviewed by the Howard County Association of Student Councils advisor, a HCPSS employee.   Compl. Ex. B, at 2. Then, each HCPSS middle school and high school forms a committee comprised of the school's principal, a student-government advisor or a counselor, and three students chosen by the principal.   *Id.*   Those committees select students to serve as delegates to a convention, where the delegates select two candidates for the Board seat and an alternate from among the student applicants.   *Id.* at 2–3.   After a campaign period, HCPSS students in grades six through eleven choose between the two candidates by casting confidential ballots, the tabulation of which is overseen by student-government members at the high-school level and by student-council advisors at the middle-school level.   *Id.* at 3.   The Superintendent or her designee must certify the results of the vote in June, and the Student Member takes office at the first meeting in July, after receiving approval of the Board.   *Id.*; Md. Code, Educ. § 3-701(f)(3)(i).

---

are educated at home have no say on the County's busing polices.   Compl. ¶ 64.   But transportation is another subject on which the Student Member exercises no voting power.   Md. Code, Educ. § 3-701(f)(7)(vi).

### B.    Procedural Background

Plaintiffs Lisa Kim and William Howard, two adult residents of Howard County, and Kim's son, J.K., filed this putative class action against the Board on March 16, 2021.   They allege that § 3-701(f) violates the Fourteenth Amendment's Equal Protection Clause by allowing only HCPSS students to participate in the selection of the Student Member.   Plaintiffs Kim and J.K. also allege that the statute violates the First Amendment's Free Exercise Clause by precluding students like J.K. who attend private religious schools or others who are educated at home for religious reasons from participating in the selection of the Student Member.   In their prayer for relief, Plaintiffs seek only declaratory relief.   Compl. 15–16.   The Board moves to dismiss the Complaint with prejudice.

### LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a case is subject to dismissal if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*

In reviewing a 12(b)(6) motion, a court must "accept a plaintiff's allegations of material facts as true and construe the complaint in the plaintiff's favor." *Malkani v. Clark Consulting, Inc.*, 727 F. Supp. 2d 444, 447 n.2 (D. Md. 2010). The court may also take judicial notice of "fact[s] that [are] not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *Bowman v. Jack Cooper Transp. Co.*, 399 F. Supp. 3d 447, 451 (D. Md. 2019). In addition, the court may "consider documents that are explicitly incorporated into the complaint by reference." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

## ARGUMENT

### I.   Plaintiffs fail to state a claim under the Equal Protection Clause.

Counts I and II of the Complaint allege that § 3-701(f) violates the Fourteenth Amendment's Equal Protection Clause by granting HCPSS students undue political power on the Board. Plaintiffs frame this supposed political windfall in two different, but related ways. In Count I, Plaintiffs allege that § 3-701(f) allows eighteen-year-old HCPSS students to vote for more Board members than other Howard County residents and, therefore, gives them greater representation on the Board. Compl. ¶¶ 41–42, 47. Count II alleges that the Student Member represents a much smaller number of constituents than the at-large Elected Members, implying that HCPSS students wield disproportionate influence over the Board. *Id.* ¶¶ 56–58.

These claims potentially implicate three distinct branches of equal-protection

jurisprudence.   Counts I and II explicitly rely upon the Fourteenth Amendment's "one-person, one-vote" principle.   Compl. ¶¶ 37, 39, 41–43, 55, 58–59.   That principle "refers to the idea that each vote must carry equal weight," *Rucho v. Common Cause*, 139 S. Ct. 2484, 2501 (2019), and it safeguards against "dilution or debasement" of the right to vote.   *Hadley v. Junior Coll. Dist. of Metro. Kansas City*, 397 U.S. 50, 54 (1970).   But Plaintiffs' real objection to § 3-701(f) is not that HCPSS students exercise more voting power than other Howard County residents in Board elections. Rather, Plaintiffs object that § 3-701(f), as they understand it, extends to HCPSS students the right to participate in the process of selecting the Student Member, while at the same time denying that right to other Howard County residents.   Counts I and II therefore potentially implicate case law concerning both (1) vote denial, *see Kramer v. Union Free Sch. Dist.*, 395 U.S. 621 (1969), and (2) extension of the franchise, *see, e.g., Spahos v. Mayor & Councilmen of Town of Savannah Beach*, 207 F. Supp. 688 (S.D. Ga. 1962) (three-judge court), *aff'd* 371 U.S. 206 (per curiam).   None of the aforementioned theories furnish an analytical framework under which Plaintiffs can prevail.

      As explained below, Counts I and II fail at the outset for a simple reason: the Equal Protection Clause's voting safeguards do not apply to non-elective offices like the Student Member position.   And, even if the Student Member position were elective (which it is not), Plaintiffs' complaint would still fail to state a claim under any potentially applicable equal-protection theory.   Because the Student Member

represents all Howard County residents—contrary to what Plaintiffs allege—
§ 3-701(f) does not implicate the one-person, one-vote principle.   Nor can § 3-701(f)
be said to deny the franchise to adult Howard County residents, because they retain a
dominant voice in selecting Board members.   Moreover, § 3-701(f) is narrowly
tailored to Maryland's compelling interest in empowering students and providing
them with civic education and therefore survives any level of judicial scrutiny to which
it might be subjected.

A.   **The Equal Protection Clause's voting safeguards are inapplicable to non-elective offices.**

The fundamental obstacle to Plaintiffs' equal-protection claims—however they
might be construed—is that the Equal Protection Clause's voting safeguards do not
apply to non-elective offices, like the Student Member position.   The Supreme Court
has held that the one-person, one-vote principle has "no relevancy" to non-elective
offices like the Student Member position.   *Sailors v. Bd. of Educ. of Kent Cty.*, 387 U.S.
105, 111 (1967).   As the Court has explained, "where a State chooses to select
members of an official body by appointment rather than election, and that choice
does not itself offend the Constitution, the fact that each official does not 'represent'
the same number of people does not deny those people equal protection of the laws."
*Hadley*, 397 U.S. at 58.

In *Sailors*, the Court held that the one-person, one-vote principle did not apply
to positions on a county school board because they were non-elective.   387 U.S. at

111.   The board's members were selected through a two-step process:   First, local (i.e., sub-county) school boards chose delegates to attend a meeting for the selection of the county-school-board members; second, the delegates "cast . . . votes" for county-school-board members from a slate of candidates.   *Id.* at 106–07, 109 n.6, 111.   The Court concluded that this two-step process rendered the board "basically appointive rather than elective."   *Id.* at 109.   That conclusion was "evident" to the Court because the board's "membership . . . [was] not determined, directly or indirectly, through an election in which the residents of the county participate."   *Id.* at 109 n.6.   Rather, the board's "electorate" was composed of "the delegates from the local school boards."   *Id.*

Thus, under *Sailors*, the decisive factor in determining whether the Equal Protection Clause's voting safeguards apply is whether the electorate as a whole fills the position in question.   *See Hadley*, 397 U.S. at 58 (identifying the "use [of] the process of popular election" as the trigger for application of the one-person, one-vote rule); *Vander Linden v. Hodges*, 193 F.3d 268, 273 (4th Cir. 1999) (holding that the one-person, one-vote principle applied to a system of county governance by popularly elected state legislators because "the power to determine the membership of a legislative delegation reside[d] in the electorate"); *Cunningham v. Municipality of Metro. Seattle*, 751 F. Supp. 885, 893 (W.D. Wash. 1990) (an office is non-elective when "the selection of [officeholders], and the non-selection of others . . . [is] decided upon not by the voters but by others charged by law with the duty of choosing"); *Rosenthal v. Bd.*

*of Educ. of Cent. High Sch. Dist.*, 385 F. Supp. 223, 226 (E.D.N.Y. 1974) (three-judge court) (identifying the "popular election" as the "crucial factor in the application of the Fourteenth Amendment considerations to any apportionment scheme").

Although *Sailors* specifically addressed the non-applicability of the one-person, one-vote principle to non-elective offices, courts have held that the same logic applies to vote-denial claims. *See Butts v. Aultman*, 953 F.3d 353, 360 (5th Cir. 2020) ("*Kramer* focuses on statutory schemes that extend the *franchise* in a selective manner" and not to "appointive positions" (emphasis in original)); *Mixon v. Ohio*, 193 F.3d 389, 405–06 (6th Cir. 1999) (explaining that "problems of voter inclusion would arise" only if the school boards at issue were, contrary to the facts of the case, "elected bodies"). Similarly, franchise-extension claims, as the label suggests, concern the electorate as a whole. *See Collins v. Town of Goshen*, 635 F.2d 954, 958 (2d Cir. 1980). The elective/non-elective distinction set forth in *Sailors* therefore applies to all of the Equal Protection Clause's voting safeguards.

Courts also have held that *Sailors* applies to non-elective positions on multi-member bodies on which both elected and non-elected members serve. "[A]ppointed members of a mixed board should not be counted in calculating the deviation [in the ratio between residents and representatives], because the voters do not select them. The aim of one person, one vote—to protect each voter's right to an equal voice in choosing elected representatives—is not involved where members of a board are appointed." *Cunningham*, 751 F. Supp. at 894; *see also Butts*, 953 F.3d at

11

360 (rejecting "plaintiff's argument that the court is obligated to compare the relative strength of the elective positions and the appointive positions on . . . [a school] board").   Therefore, the fact that the Elected Members of the Howard County Board are—quite plainly—elected is irrelevant to whether the Equal Protection Clause's voting safeguards apply to the selection of Student Member.

### B.   The Student Member position is a non-elective office.

The Student Member position is a non-elective office, as established by the plain text of § 3-701(f), the process by which the Student Member is selected, and Maryland authorities construing the position.   Counts I and II therefore are meritless.

Section 3-701 itself makes clear that the Student Member position is a non-elective office.   The first clause of the statute explicitly distinguishes between the Board's "[s]even *elected* members" and the "[o]ne *student* member"—a distinction maintained consistently throughout the statute.   Md. Code, Educ. § 3-701(a)(1) (emphases added); *compare, e.g.*, *id.* § 3-701(b)(1) (establishing qualifications for "[a] candidate who becomes an elected member of the county board"), *with id.* § 3-701(f)(1) (establishing separate qualifications for "[t]he student member"). Because § 3-701 does not group the Student Member with the positions on the Board that the General Assembly calls "elected," it cannot be considered an elective position.

The process by which the Student Member is selected also demonstrates that the General Assembly intended to create a non-elective position.   As Plaintiffs' own

counsel put it in a press release, the process for selecting the Student Member does not resemble "a real government election."[4]   That is because it is *not* an election. Rather, the General Assembly designed a selection process in which HCPSS students in grades 6 through 11—who are *ineligible* to vote in any actual election—participate with careful oversight and input from school administrators.   *Compare* Md. Const. art. I, § 1 (guaranteeing the franchise to U.S.-citizen Maryland residents who are 18 years old and above), *with* Md. Code, Educ. § 3-701(f)(3)(iii); *see also* Compl. Ex. B. (detailing the process for the nomination and selection of the Student Member and the role of HCPSS school administrators in those processes).   The Student Member position is therefore "basically appointive" because its "electorate" is not "the people of the county" but, rather, the HCPSS student body.   *Sailors*, 387 U.S. at 109 & n.6.

The non-elective nature of the Student Member position is confirmed by the numerous ways in which the process for filling the position is wholly unlike the process for popular elections set forth in Maryland's election-law statutes.   Plaintiffs themselves highlight several of those distinguishing features.   *See* Compl. ¶ 48 (describing the procedures governing the selection of the Elected Members as "entirely different" from those applicable to the Student Member); *id.* ¶ 49 (alleging that the procedures governing the selection of the Student Member do not include,

---

[4] PILF Press Release, *supra*; *see also* Compl. ¶ 49 (stating that the "procedures used to elect the Student Member" do not resemble "regular Maryland elections conducted under Maryland code").

among other things, "registration, government administered secret ballots, polling place notices under the Help America Vote Act of 2002, deadlines to certify, observer rights, and myriad of other standard procedures and safeguards that characterize Maryland elections"); *id.* ¶ 51 (noting the lack of a primary election and participation of Howard County voters in the process of selecting the Student Member); *id.* ¶ 52 (discussing the involvement of school employees in nominating Student Delegates to the Student Convention and staffing that convention, including the alleged "outsize role" that the Superintendent plays in the process).

In addition to the differences Plaintiffs stress, the procedures specified in § 3-701(f) for the selection of the Student Member differ from Maryland elections in several other key ways.   Whereas voters have the final say over which candidate will assume an elective office, the Board itself must approve the Student Member.   Md. Code, Educ. § 3-701(f)(3)(i); *see also, e.g.*, Board of Education of Howard County, *Meeting Agenda Item* (June 11, 2020), https://perma.cc/C6XJ-P6PD.   The Student Member selection process takes place at a different time than the date on which all general elections in Maryland must occur and on a different cycle.   *Compare* Md. Code, Educ. § 3-701(f)(2) (providing that the Student Member serves a one-year term beginning on July 1); Compl. Ex. B, at 3 (requiring HCPSS students to select a new Student Member each year by April 30), *with* Md. Const. art. XV, § 7 ("All general elections in the State shall be held on the Tuesday next after the first Monday in the month of November . . . ."); Md. Code, Elec. Law § 8-301(a)(1) (providing that

14

statewide general elections take place in even-numbered years).   And in the event that the Student Member is unable to perform her statutory duties, the runner-up in the selection process assumes the role.   *Compare* Md. Code, Educ. § 3-701(f)(4), *with id.* §§ 3-701(d)(3)–(7) (providing a process for vacancies among the Elected Members to be filled through appointment or election).   Had the General Assembly intended to make the Student Member position an elective office, it would not have provided an entirely different set of procedures to govern the process for filling the position than those that apply to all other elective offices in Maryland.

That conscious decision to establish the Student Member position as a non-elective office is not negated by § 3-701(f)'s use of the words "election" and "vote" as shorthand.   In *Sailors* itself, "the word 'elect' is used by the court notwithstanding the court's holding that the county board is appointive and therefore not within the one man, one vote principle."   *Rosenthal*, 385 F. Supp. at 225.   Nor do attributes common to elections such as candidates, ballots, or majority rule render the selection process elective.[5]   *Sailors*, 387 U.S. at 109 n.6 (concluding that a selection process in which delegates "cast . . . votes" was non-elective).   All that matters is that the Student Member is not selected, "directly or indirectly, through an election in which the residents of the county participate."   *Id.*

---

[5] The fault line between elective and non-elective offices certainly is not whether the selection process conjures for some observers comparisons to the 1999 high-school comedy *Election*.   Compl. ¶ 49.

Consistent with this analysis, a state trial court recently held that the Student Member position is non-elective.   Just last month, in *Spiegel v. Board of Education of Howard County*, the Circuit Court for Howard County explicitly rejected a pair of parents' claim that § 3-701(f) violates the Maryland Constitution by diluting the votes of Howard County's adult residents.   No. C-13-CV-20-000954, slip op. at 15, 17 (Md. Cir. Ct. Howard Cty. Mar. 25, 2021), *appeal docketed*, No. CSA-REG-0117-2021 (Md. Ct. Spec. App. Mar. 29, 2021) (attached as Exhibit 2).   Citing the "plain language of Section 3-701," "the statutory scheme as a whole," and "the various processes by which the General Assembly has established to fill the seats of the boards of education," the court found that "the student member position is not elected" but, rather, is filled through a process "specific to student members, whereby students hold the position and are selected in some fashion by other students."   *Id.* at 12–13. Moreover, in reaching that conclusion, the court explicitly noted that its holding that the Student Member position is "not . . . subject to popular election also avoids any Fourteenth Amendment challenges."   *Id.* at 12 (citing *Hadley*, 397 U.S. at 58; *Sailors*, 387 U.S. at 111).

The Maryland Attorney General's Office reached the same conclusion when it opined that a bill creating a student seat (with voting power) on the school board in Prince George's County would be constitutional.   *See* Md. Att'y Gen. Op. No. 80-030, 1980 WL 127893 (Mar. 12, 1980) (unpublished).   The bill provided that the Student Member would be "elect[ed]" by a group of student delegates, rather than

registered voters.   *Id.* at *1.   But Attorney General Stephen Sachs concluded that the statute's use of the term "elect" was "not dispositive of the fundamental question of whether, from a constitutional point of view, that selection process is more properly regarded as an election or an appointment" and thus that "the selection of the student member was more properly regarded as appointive rather than elective."   *Id.* at *1. Accordingly, Attorney General Sachs found that the student seat on the Prince George's County Board was not "subject to the one-person, one-vote principle," *even if* the selection process were viewed "as an 'election' by the students of their representative."   *Id.* at *2 & n.3; *see also* Letter from Douglas F. Gansler, Att'y Gen. of Md., to Martin O'Malley, Governor of Md. 1 (Apr. 19, 2007) (approving H.B. 513, the bill that enacted § 3-701(f), "for constitutionality and legal sufficiency") (attached as Exhibit 3).

If, despite all the evidence to the contrary, this Court were to conclude that the Student Member position is an elective office, that holding would jeopardize numerous other statutes.   The Student Member is not unique among Maryland governmental officials in being selected to serve through a vote of his or her peers. For instance, the General Assembly created a seat on the State Board of Education for a "certified teacher who is actively teaching," and explicitly provided that the seat be filled by the person "who received the highest number of *votes* after an *election* by teachers in the State."   Md. Code, Educ. § 2-202(b)(4) (emphases added).   Several members of the State's Attorney's Coordination Council are "chosen by a majority

*vote*" of the State's Attorneys in several counties.   Md. Code, Crim. Proc.

§§ 15-202(a)(7)–(11) (emphasis added).   And the Board of Trustees of the Baltimore

City Police Department Death Relief Fund is "*elected* from the Department."   Md.

Code, Local Gov't, § 30-104(a)(1) (emphasis added).   *Sailors* provides a bright-line

rule that shields positions like these from heightened judicial scrutiny because none of

them are selected through a vote by the electorate as whole.

Because the Howard County electorate does not select the Student Member, it

is a non-elective office to which the Equal Protection Clause's voting safeguards do

not apply.   Counts I and II should therefore be dismissed.

**C.   To the extent that the Student Member position can be considered elective, it does not violate any of the Equal Protection Clause's voting safeguards.**

Even if the Student Member position were elective—and it is not—Plaintiffs

have not stated an equal-protection claim of any sort.

**1.   One-person, one-vote principle**

Plaintiffs do not state a claim under the one-person, one-vote principle

because, although they allege malapportionment on the Board, that allegation is belied

by HCPSS policy that is incorporated by reference into the Complaint and by the legal

principles that govern apportionment.   A bedrock assumption underlying Counts I

and II is that the Student Member represents only HCPSS students, while the at-large

Elected Members represent all Howard County residents within their voting district.

Compl. ¶ 57.   But that is not true.   As HCPSS policy makes clear, the Student

Member is required to represent not just his or her fellow students, but also all of the "staff, parents and *others in the community* by presenting a student perspective on matters that come before the Board."   Compl. Ex. A, at 4 (emphasis added).

HCPSS policy aside, Plaintiffs fundamentally misconceive the population that is relevant to one-person, one-vote claims.   Total population—not voting population— is the relevant populace for apportionment considerations.   *Evenwel v. Abbott*, 136 S. Ct. 1120, 1130 (2016) ("States and localities may comply with the one-person, one-vote principle by designing districts with equal total populations.").   Thus, the Supreme Court has held that the one-person, one-vote principle is "followed automatically" when elected officials "are chosen . . . on a statewide basis" because characterizing such a scheme as weighting the "votes of inhabitants" differently would be "extraordinary."   *Wesberry v. Sanders*, 376 U.S. 1, 8 (1964).   The same analysis governs at-large elections within a particular jurisdiction.   *City of Mobile v. Bolden*, 446 U.S. 55, 78 (1980) ("There can be, of course, no claim that the 'one person, one vote' principle has been violated in . . . elections . . . conducted at large.").   Each vote cast in an at-large election "automatically" has equal weight to any other because, as in a statewide election, each vote represents an equal slice of the total population.

Plaintiffs concede that, to the extent that the Student Member can be considered an elected official, he or she represents an at-large district.   Compl. ¶ 41 ("The jurisdiction from which the Student Member is elected is limited to students of HCPSS, without regard to district residence, hence at-large.").   They also concede

that elected officials represent all residents within their jurisdiction, irrespective of voting eligibility.  *Id.* ¶ 29 ("HCPSS students are constituents of and already represented by the two at large board members and a single-district board member where they live.").   The same is true of the Student Member position.   Students throughout Howard County participate in the selection of the Student Member, and he or she, like the two at-large Elected Members, represents all Howard County residents, including those who are ineligible to participate in his or her selection. Accordingly, the one-person, one-vote principle has no application to the position. *See Bolden*, 466 U.S. at 78.

Plaintiffs fare no better in stating a one-person, one-vote claim limited in scope to 18-year-old students, a population with which Count I is preoccupied.   According to Plaintiffs, 18-year-old HCPSS students are able to vote for four members of the Board (two at-large Elected Members, one district-level Elected Member, and one Student Member), whereas other adult residents of Howard County can vote for only three Elected Members.   Compl. ¶¶ 38–43.   But students typically turn eighteen during their twelfth-grade year, and Plaintiffs do not identify a single individual who actually wields the undue power alleged in the Complaint.[6]   Even if Plaintiffs were to identify such an individual (and, again, assuming that the Student Member position is

---

[6] The Board also notes that the possibility of eighteen-year-old HCPSS students voting for four Board Members would occur only when the stars align so that a hypothetical student turns 18 in an even-numbered year during which Elected Members are on the ballot.   *See* Md. Code, Elec. Law § 8-301(a)(1).

elective), § 3-701(f) should be read to preclude eighteen-year-old HCPSS students from participating in the selection of the Student Member to "avoid a potential constitutional problem."   *Gregory v. Ashcroft*, 501 U.S. 452, 464 (1991) (construing the Age Discrimination in Employment Act of 1967 to not apply to state judges to avoid reaching a Tenth Amendment claim).

Accordingly, Plaintiffs fail to state a claim under the one-person, one-vote principle, even if the Student Member position is considered elective.

### 2. Vote denial

Because the Student Member represents the same number of constituents that the two at-large Elected Members represent, Counts I and II are better understood not as claims under the one-person, one-vote principle, but as vote-denial claims. Plaintiffs' true objection therefore is that they are denied the right to participate in the selection of the Student Member while HCPSS students are permitted to do so.   But even (generously) construed in that light, Plaintiffs still have failed to state a viable claim.

Although there is no constitutional right to vote in school-board elections, *Sailors*, 387 U.S. at 108, the Supreme Court has held that strict scrutiny applies to statutes that "grant[] the franchise to residents on a selective basis" and thus deny certain residents an "effective voice."   *Kramer v. Union Free Sch. Dist.*, 395 U.S. 621, 626–27 (1969); *see also Locklear v. N.C. Bd. of Elections*, 514 F.2d 1152, 1154 n.5 (4th Cir. 1975) ("The implied premise of *Kramer* was that a citizen in a given jurisdiction has an

equal right to vote with other citizens.").

In *Locklear*, the Fourth Circuit invalidated an electoral scheme where residents of cities in a certain geographical area were eligible to vote for members of their own independent school boards and also for some seats on another independent school board that served county (i.e., rural) residents in the same area.   514 F.2d at 1153–54, 1156.   The court held that the scheme implicated *Kramer* because it denied county residents a vote in city-school-board elections while granting city residents the right to vote in county-school-board elections.   *Id.* at 1156.   In addition, the court found that that scheme was not narrowly tailored to the asserted government interest in giving city residents a voice in county elections because that interest could have been served without subjecting county voters to less favorable treatment.   *Id.* at 1155–56.   The court therefore held that the scheme violated the Equal Protection Clause.   *Id.* at 1156.

Plaintiffs cannot state a claim under *Kramer* and its progeny because the electoral scheme that governs the Howard County Board (again, assuming that the Student Member is part of that scheme) is not comparable to the one in *Locklear*. Unlike the scheme in *Locklear*, § 3-701 does not deny any Howard County voter the right to participate in any election.   On some issues that come before the Board, § 3-701(f) marginally mitigates the otherwise total exclusion of HCPSS students from the political decisions that affect their school lives.   Section 3-701 does not deny adult residents of Howard County the right to vote in Board elections.   Indeed, adult

Howard County residents retain a dominant voice on the Board, as they alone select seven of the eight members of the Board.   If anything, § 3-701(f) is therefore a franchise-*expansion* scheme, not a vote-*denial* scheme.   *Kramer* is simply inapposite.

In addition, if *Kramer* applies, § 3-701(f) survives strict scrutiny.   In the only written testimony that accompanied the law's passage, Joshua Michael, a former student member of the State Board of Education, testified that the purpose of the legislation was to "promote student advocacy" and to "empower students to take ownership of their communities and the world around them."   *Hearing on H.B. 513 Before H. Comm. on Ways and Means*, 2007 Leg., 423rd Sess. 1–2 (Md. 2007) (statement of Joshua L. Michael).   Section 3-701(f) serves those compelling interest by giving students limited representation on the Board and by involving the entire HCPSS student body in the selection of the Student Member.   *Cf. Akina v. Hawaii*, 141 F. Supp. 3d 1106, 1112, 1133 (D. Haw. 2015) (holding that limiting participation in a convention addressing Native Hawai'ian sovereignty to "qualified native Hawaiians" was justified by the state's "compelling interest in facilitating a forum that might result in a unified and collective voice amongst Native Hawaiians"), *granting application for injunction pending appeal*, 577 U.S. 1024, *dismissing appeal as moot*, 835 F.3d 1003.

Alternative methods of involving students in the school-board selection process would not achieve the General Assembly's goals as effectively.   Allowing HCPSS students to vote alongside adult residents of Howard County for one or more of the seats on the Board would not "empower" students because they would be a

tiny minority in the electorate.   *Cf. Gaffney v. Cummings*, 412 U.S. 735, 754 (1973) (holding that using apportionment to "provide a rough sort of proportional representation in the legislative halls of the State" does not violate the Fourteenth Amendment).   Legislatures often have good reasons for creating non-elective government positions, particularly in the school-board context.   For example, a non-elective selection process may help "promot[e] diversity in viewpoints which otherwise may not achieve representation on an elected school board" and "avoid[] the problem of single issue campaigns which frequently occur within elected school boards."   *Mixon*, 193 F.3d at 403 (citation omitted).   And although a non-voting seat on the Board—which Howard County had prior to 2007—provides a limited vehicle for educating students about the political process, a voting seat (even if limited to certain issues) imbues the selection process with more gravity and higher stakes, increasing the likelihood that students will engage with the issues that the Board's business comprises and that they will be empowered by the selection process.   That is why HCPSS students fought for twenty years to realize their goal of attaining a voting seat on the Board.   Accordingly, § 3-701(f) survives strict scrutiny.

### 3.   Franchise expansion

Because § 3-701(f) effects no malapportionment and does not deny any adult Howard County resident the right to vote in Board elections, franchise expansion is the only equal-protection doctrine that the statute arguably implicates (again, assuming that the Student Member position is an elective office, which it is not).   Courts have

24

held that rational-basis review applies to "claims by persons who have the vote that extension of the franchise to others with a lesser interest in an election impermissibly dilutes their voting power." *Collins*, 635 F.2d at 958; *see also Spahos*, 207 F. Supp. at 692; *Brown v. Bd. of Comm'rs of City of Chattanooga*, 722 F. Supp. 380, 398 (E.D. Tenn. 1989) ("the traditional 'rational basis' test" applies to statutes that "*expand* rather than curtail the franchise" (emphasis in original)).

In *Spahos*, for example, a three-judge court upheld a statute that expanded the electorate of a town council to include non-resident property owners and restricted the electorate for three of the seats on the council to those non-residents, 207 F. Supp. at 689, 692, and the Supreme Court affirmed that decision, 371 U.S. at 206. According to the district court, the electoral scheme did not violate the Equal Protection Clause because it was rationally related to the legislature's interest in "permitting those persons with property within the municipality, many of whom were summer residents therein, to have a voice in the management of its affairs." 207 F. Supp. at 692.

Similarly, § 3-701(f) is rationally related to the General Assembly's interest in giving HCPSS students a voice on the Board's management of their schools.[7]   Just as

---

[7] Rational-basis review also applies to the General Assembly's decision not to extend the selection process to Howard County residents who attend private schools or are educated at home.   *See* Compl. ¶¶ 44–47; *Katzenbach v. Morgan*, 384 U.S. 641, 658 (1966) (applying rational-basis review to a law that guaranteed the right to vote to people educated through at least sixth grade in an American-flag school, but not to people educated in non-American-flag schools); *Holt Civic Club v. City of Tuscaloosa*, 439

the legislature's decision in *Spahos* to reserve seats on the town council for non-resident property owners did not render the electoral scheme irrational, the General Assembly did not act irrationally in ensuring that HCPSS students had an audible voice on the Board by reserving to them the role of selecting the Student Member. Accordingly, the statute would not violate the Equal Protection Clause even if the Student Member position were an elective office.[8]

## II.   Plaintiffs' equal-protection claims are untimely.

In addition to failing on the merits, Counts I and II also are untimely.   When federal law fails to provide a statute of limitations, as is the case for Plaintiffs' Fourteenth Amendment claims, courts often employ the doctrine of laches as an alternative.   *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 160–62 (1983).   "Laches is 'an equitable defense' that 'is distinct from the statute of limitations.'"   *Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 294 (4th Cir. 2021) (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002)).   The doctrine "generally applies to preclude relief for a plaintiff who has unreasonably 'slept' on his

---

U.S. 60, 69–70 (1978) (holding that Tuscaloosa was not required to extend the franchise for municipal elections to residents of an unincorporated community on the city's outskirts simply because the community's residents were subject to some of the Tuscaloosa's laws).

[8] Of note, several Maryland cities have enfranchised youth and noncitizens for the purpose of voting in municipal elections.   *See, e.g.*, Clara Niel, *Takoma Park Is One of Five Cities Where Minors Can Vote. And Young Voters Are Turning Out*, The Diamondback (Oct. 1, 2020), https://perma.cc/3VRC-6VKN; Rachel Chason, *Non-Citizens Can Now Vote in College Park, Md.*, Wash. Post (Sept. 13, 2017), https://perma.cc/VBW2-8LN4.

rights." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 121 (4th Cir. 2011).

"Laches requires proof of (1) lack of diligence by the party against whom the defense

is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United

States*, 365 U.S. 265, 282 (1961).

The Fourth Circuit applied the doctrine of laches to bar vote-dilution and

related claims brought seventeen years after an allegedly unconstitutional redistricting

plan for a county board of supervisors took effect. *White v. Daniel*, 909 F.2d 99, 100–

01, 104 (4th Cir. 1990).   In *White*, the court found that the plaintiffs' delay in

challenging the redistricting plan was "inexcusable and unreasonable" because at no

point in the preceding seventeen years did they "voice[] [any] objection" and because

they waited until "months after" the most recent election conducted under the plan to

bring suit. *Id.* at 102–03.   Given the extreme tardiness of the plaintiffs' lawsuit, the

court also held that the county was not required to "show the degree of prejudice"

that would have been required for less "aggravated" delay. *Id.* at 103.   The court

held that the prejudice prong of the laches test was satisfied because of the

"disruption" that the county would have experienced if forced to redistrict. *Id.* at

104; *see also Simkins v. Gressette*, 631 F.2d 287, 296 (4th Cir. 1980) (finding a vote-

dilution claim equitably foreclosed because the plaintiffs, without "good reason,"

"wait[ed] for more than three years until the eve of the 1980 elections" to bring suit).

This case is on all fours with *White*.   Section 3-701(f) has been on the books

for over thirteen years.   2007 Md. Laws 3887.   Yet, until now, Plaintiffs have never

voiced any objection to the statute.   Moreover, HCPSS students most recently

concluded the process of selecting a Student Member nearly a year ago, *see* Compl.

Ex. B, at 3 (requiring that the process for selecting the Student Member be concluded

by April 30), and that individual has been in office since June 2020, *Meeting Agenda*

*Item*, *supra* section I.B.   Remedying the defect that Plaintiffs perceive in the Student

Member position also would cause great disruption.   Elected Board seats will not be

on the ballot again until November 2022.   *See* Md. Code, Elec. Law § 8-301(a)(1).

Therefore, any remedy would require the mid-term elimination of a voting seat on the

board, the creation of an entirely new appointive process for filling the Student

Member position, or a special election to be held at significant expense to state

taxpayers.   In light of Plaintiffs' extreme delay, such disruption would not be

equitable.

## III. Plaintiffs fail to state a free-exercise claim because § 3-701(f) is a neutral, generally applicable law.

Count III alleges that § 3-701(f) violates the First Amendment's Free Exercise

Clause because it "penalizes religious activity" by precluding students at non-HCPSS

schools, including "Catholic schools, other religious schools, and those who are

homeschooled for religious purposes" from participating in the selection of the

Student Member.   Compl. ¶¶ 61–62.   This claim fails because § 3-701(f) is a neutral,

generally applicable law and therefore does not implicate the Free Exercise Clause.

In *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S.

872 (1990), the Supreme Court held that that a neutral, generally applicable law does not violate the Free Exercise Clause merely because it incidentally affects religious practice. *Id.* at 878–79; *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) ("[O]ur cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."); *Am. Life League, Inc. v. Reno*, 47 F.3d 642, 654 (4th Cir. 1995).   Neutral laws are those that "proscribe[] conduct without regard to whether that conduct is religiously motivated." *Hines v. S.C. Dep't of Corr.*, 148 F.3d 353, 357 (4th Cir. 1998).   Generally applicable laws "make[] no distinction between action based on religious conviction and action based on secular views." *Id.*

Section 3-701(f) is a hornbook example of a neutral, generally applicable law. It precludes non-HCPSS students from participating in the selection of the Student Member whether they attend a secular private school or a parochial school, and whether they are educated at home for religious or secular reasons.   And, of course, the statute excludes all nonstudents from the selection process irrespective of their religious beliefs or practices.   By the same token, § 3-701(f) is neutral and generally applicable in that it permits HCPSS students of all faiths—and those who adhere to no faith at all—to participate in the process of selecting the Student Member.

Plaintiffs' free-exercise claim is very similar to the unsuccessful claim in *Goodall ex rel. Goodall v. Stafford County School Board*, 60 F.3d 168 (4th Cir. 1995).   In that case, a

hearing-impaired child and his parents brought suit under the Free Exercise Clause challenging the school board's refusal to provide a cued-speech transliterator to the child once he left public school to attend a parochial school.   *Id.* at 169.   The Fourth Circuit held that the plaintiffs free-exercise claim failed because the child "would receive the services of a cued speech transliterator free of charge if he attended the County's public schools."   *Id.* at 173.   Similarly, Plaintiff J.K. would be eligible to participate in the selection of the Student Member if he attended a HCPSS school. His enrollment at a different school—which simply *happens* to be a parochial school— is the only reason that he is ineligible to do so.

Because § 3-701(f) is a neutral, generally applicable law, it does not violate the Free Exercise Clause.   Count III should therefore be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Board respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice.

Dated: April 27, 2021               /s/ Jonathan L. Backer

JONATHAN L. BACKER   (D. Md. No. 20000)
NICOLAS Y. RILEY   (D. Md. No. 810809)*
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, DC 20001
nr537@georgetown.edu
jb2845@georgetown.edu
Tel: (202) 662-9042

* *Admitted pro hac vice.*

31

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2021, I electronically filed the foregoing with the Clerk of the U.S. District Court for the District of Maryland by using the CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Jonathan L. Backer
JONATHAN L. BACKER   (D. Md. No. 20000)
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, DC 20001
jb2845@georgetown.edu

*Attorney for Defendant*