# EXHIBIT 2

| | | |
|---|---|---|
| TRACI SPIEGEL, *et al.*, | * | IN THE |
| Plaintiffs | * | CIRCUIT COURT |
| v. | * | FOR |
| BOARD OF EDUCATION OF HOWARD COUNTY, | * | HOWARD COUNTY |
| | * | Case No: C-13-CV-20-000954 |
| Defendant | | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This matter came before the Court upon consideration of the Plaintiff's Motion for Summary Judgment, the Defendant Board of Education of Howard County's Motion to Dismiss, or in the alternative, for Summary Judgment, and the responses thereto. A hearing on these motions was held on March 16, 2021, after which the Court held these matters sub curia.

## BACKGROUND

The Plaintiffs instituted this declaratory judgment action against the Board of Education of Howard County ("Board") on December 16, 2020, after two "4 to 4 stalemate[s]," where the student member of the board "caus[ed] the stalemate," hindered efforts to return students to school for in-person instruction. (Compl. 11-12.) Shortly thereafter, on December 18, 2020, the Plaintiffs filed a Motion for Summary Judgment, arguing that the statute creating the student member of the board, subsection (f) of Maryland Code, Education, Section 3-701 (hereinafter "Section 3-701") violates the Maryland Constitution. The Plaintiffs request that the Court declare that Section 3-701(f) is unconstitutional and enjoin the current student member of the board from voting on any measure before the Board. (Compl. 17.)

The Board filed an opposing Motion to Dismiss or, in the alternative, for Summary Judgment on February 10, 2021, arguing in support of the validity of Section 3-701(f) and

requesting that the Court issue a declaratory judgment in the Board's favor. An Amicus Brief[1] in support of the Board's position was filed on February 9, 2021.

At the virtual motions hearing held on March 16, 2021, the Court heard the Plaintiffs' argument against the validity of Section 3-701(f) and the Board's defense thereof. The Amici did not participate in oral argument. At the conclusion of the hearing, the Court held these matters sub curia with this written decision to follow.

## STANDARD OF REVIEW

Pursuant to Maryland Code, Courts & Judicial Proceedings, § 3-406, any person "whose rights, status, or other legal relations are affected by a statute, municipal ordinance, administrative rule or regulation. . . may have determined any question of construction or validity arising under the instrument, statute, ordinance, administrative rule or regulation. . . and obtain a declaration of rights, status, or other legal relations under it." Maryland courts will grant a declaratory judgment in a civil case "to terminate the uncertainty or controversy giving rise to the proceeding, and if: (1) An actual controversy exists between contending parties; (2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or (3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it." MD. CODE. ANN., CTS. & JUD. PROC., § 3-409(a).

Pursuant to Maryland Rule 2-501(f), "[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." "[I]t is permissible for trial courts to resolve matters of law by summary judgment in

---

[1] The Amici are 128 former student members of the board from every jurisdiction in the State.

declaratory judgment actions." *Lovell Land, Inc. v. State Highway Admin.*, 408 Md. 242, 255-56 (2009) (citations omitted).

"Generally speaking, the same rules that are applicable to the construction of statutory language are employed in interpreting constitutional verbiage[.]" *Abrams v. Lamone*, 398 Md. 146, 172 (2007) (quoting *Brown v. Brown*, 287 Md. 273, 277 (1980)). "Our predominant mission is to ascertain and implement the legislative intent, which is to be derived, if possible, from the language of the statute (or Rule) itself." *Lamone v. Schlakman*, 451 Md. 468, 490-91 (2017) (quoting *Downes v. Downes*, 388 Md. 561, 571 (2005)). "[W]hen this Court seeks to ascertain the meaning of a constitutional provision, it first will look to the 'normal, plain meaning of the language,' and, if the language is clear and unambiguous, it will not look past those terms." *Lamone v. Capozzi*, 396 Md. 53, 72 (2006) (citations omitted).

"[W]hen the meaning of a word or phrase in a constitutional or statutory provision is perfectly clear, this Court will not give that word or phrase a different meaning than is plainly understood." *Id.* The Court does "not add words or ignore those that are there. If there is any ambiguity, we may then seek to fathom the legislative intent by looking at legislative history and applying the most relevant of the various canons that courts have created." *Schlakman*, 451 Md. at 490-91 (quoting *Downes*, 388 Md. at 571 (2005)). "[W]here a statutory provision is a part of a statutory scheme, that provision will be interpreted within the context of that statutory scheme." *State Bd. of Elections v. Snyder*, 435 Md. 30, 55 (2013) (citations omitted). "Just as a statute is read in the context of a regulatory scheme, this Court construes constitutional provisions as part of the Constitution as a whole." *Id.* This Court has undertaken to interpret the relevant statutes and constitutional provisions to determine whether Section 3-701(f) is constitutional. This Court has not considered the political expediency of having a student member of the board.

## LEGAL FRAMEWORK

The only constitutional provisions specifically applicable to education are found in Article VIII of the Maryland Constitution.[2] Section 1 states:

> The General Assembly, at its First Session after the adoption of this Constitution, shall by Law establish throughout the State a thorough and efficient System of Free Public Schools; and shall provide by taxation, or otherwise, for their maintenance.

MD. CONST. art. VIII, § 1. Nowhere in the Maryland Constitution does it specify that school officials must be elected, nor does it mandate a system of various boards of education. The only constitutional provision that mentions local boards of education is Article XVII, § 7, which exempts "members of *any* elective local boards of education" from Sections 1, 2, 3, and 5 of the Article related to quadrennial elections.[3] MD. CONST. art. XVII, § 7 (emphasis supplied).

The General Assembly adopted a system of boards of education to carry out the mandate of Article VIII, establishing by statute one state board and a local board for each county and Baltimore City. The statutes establishing the various boards of education are found in the Education Article of the Maryland Code. MD. CODE ANN., EDUC., § 3-101, *et seq*.

Section 3-103 states that "[t]here is a county board of education for each county school system."[4] Section 3-105 establishes the number of board members based on the number of enrolled students. For example, Section 3-105(c) indicates that if a county school system has an enrollment of 50,000 students or more but less than 100,000 students, the county board shall have seven members. However, subsection (a) clarifies that subsection (c) does not apply to a county if the number of members of the county board is regulated by other provisions of Title 3.

---

[2] MD. CONST. art. VIII, § 2 continues the pre-existing school system until the end of the first session of the General Assembly. MD. CONST. art. VIII, § 3 relates to school funding.
[3] MD. CONST. art. XVII, § 1 explains the purpose of the article, MD. CONST. art. XVII, § 2 details the time of elections for state and county officers, MD. CONST. art. XVII, § 3 establishes terms of office for state and county officers, and MD. CONST. art. XVII, § 5 establishes terms of office for appointed officers.
[4] The board of education for Baltimore City is established in Section 3-108.1 of the Education Article.

Section 3-114(a) decrees that "the members of the county board shall be elected" in Howard County and eighteen other listed counties. The remaining five jurisdictions have a provision for a combination of elected and appointed members, but Howard County does not. EDUC., § 3-114(b)-(f). Subsection (h) states that "The election of the county boards shall be held as provided in Subtitles 2 through 14 of this title and the Election Law Article." EDUC., § 3-114(h). Section 3-108 provides that members of the county boards of educations shall be appointed by the Governor, except in three named jurisdictions, and for the counties listed in Section 3-114.

Turning to the statute at issue, Section 3-701(a)(1) states: "The Howard County Board consists of: (i) Seven elected members; and (ii) One student member." The statute sets forth residency requirements for the seven elected members and establishes their term of office. EDUC., § 3-701(b)-(d). The student member is elected to a "term of 1 year beginning on July 1 after the member's election, subject to confirmation of the election results by the county board." EDUC., § 3-701(f)(2) (emphasis supplied).

The nomination and election process of the student member:

(i) Shall be approved by the Howard County Board of Education;
(ii) Shall include a provision that provides for the replacement of one or both of the final candidates if one or both of them are unable, ineligible, or disqualified to proceed in the election; and
(iii) Shall allow for any student in grades 6 through 11 enrolled in a Howard County public school to vote directly for one of the two student member candidates.

EDUC., § 3-701(f)(3). The student member has the same rights and privileges as an elected member except in certain statutorily enumerated circumstances, such as employee discipline and budgetary matters. EDUC., § 3-701(f)(5)-(7). Section 3-701(g) provides that board motions are passed with the affirmative vote of five members if the student member is authorized to vote or four members if the student member is not authorized to vote.

## DISCUSSION

### I. The Parties' Contentions

The Plaintiffs argue that Section 3-701(f) violates the Maryland Constitution because it permits a minor to hold elective office after being chosen through an election that excludes lawfully registered voters. (Pls. Mem. 12; Pls. Opp'n. 8.) Specifically, the Plaintiffs argue that having an "elected" student member of the Board violates Article I, Section I of the Maryland Constitution, which provides, in part, that "every citizen of the United States, of the age of 18 years or upwards, who is a resident of the State . . . shall be entitled to vote in the ward or election district in which the citizen resides at all elections to be held in this State." (Pls. Mem. 9-12.)

The Plaintiffs further assert that Section 3-701(f) violates Article I, Section 12 of the Maryland Constitution because it permits a student who is not eligible to be a registered voter to hold elective office. (Pls. Mem. 17; Pls. Opp'n. 14-15.) Additionally, the Plaintiffs claim that the selection process violates Article 7 of the Maryland Declaration of Rights, which guarantees qualified citizens the right of suffrage. (Pls. Mem. 6.) The Plaintiffs argue that Section 3-701(f) infringes on the right of lawfully registered voters to select elected officials and violates the one person, one vote principle, as it may allow a subset of student "voters"[5] to select both the student member and participate in the general election of the other members of the Board. (Pls. Mem. 12; Pls. Mem. 15.) The Plaintiffs take the position that the one person, one vote principle is applicable and is ultimately violated because the student member of the board position is an elective office and because the Board exercises general governmental powers. (Pls. Opp. 18-19.)

While the Plaintiffs concede that it is not per se improper to have a student member of the board, they assert that vesting such a member with voting authority makes the student member

---

[5] This subset includes students enrolled in the Howard County public school system who are over the age of 18 and otherwise registered to vote at the time of the general election. (Pls. Mem. 15.)

position unconstitutional. All of the Plaintiffs' arguments against the validity of Section 3-701(f), which have been summarized above, rest on one major premise: that the student member of the Howard County Board of Education is elected, as contemplated by the Maryland Constitution and the Election Laws of this State. If the student member's seat is not an elective office, the Plaintiffs' arguments fail.

The Plaintiffs presented at the hearing the argument that, if the student member is not elected, the student member position is nevertheless violative of the guiding principal that the government is to be governed by adults. Further, they assert that, even if the General Assembly created this non-elective process, that local boards are constitutional in origin, rather than mere creatures of statute, thereby limiting the General Assembly's authority to create alternative selection methods. (Pls. Opp'n. 2-3.) Finally, at the hearing, the Plaintiffs altered their 'general governmental powers' argument to claim that 'constitutional scrutiny' applies whenever a board, agency, or entity is exercising general governmental functions.

In contrast, the Board argues that neither Article I, Section 1 of the Maryland Constitution, nor Article I, Section 12 apply because the student member position is an appointed position. (Def. Mem. 8-9.) The Board contends that the Maryland Constitution does not require all school board seats to be filled via a formal election and that the General Assembly has broad powers to create non-elective positions and fill them through whatever appointment process it chooses. (Def. Mem. 7.) The Board emphasizes that Section 3-701(a) distinguishes between Howard County's "[s]even elected members" and the "[o]ne student member." (Def. Mem. 9.) They argue that the General Assembly created the student seat as a non-elected position and the multi-step appointment process' inclusion of a student-body 'election' doesn't render the appointment process unconstitutional. (Def. Mem. 10.) Finally, the Board asserts that the Plaintiffs' challenge to an

elective process is untimely under Maryland Election law, is barred by the doctrine of laches, and, to the extent that a student member selection process is deemed subject to Article I, Section 1, then the State and County Boards of Elections are necessary parties. (Def. Mem. 19-35.) The Amici similarly argue that the student member seat is not an elective office. (Amici Mem. 12-17.)

## II. The Student Member of the Board Selection Process

The Court must determine whether the process for selecting the student member of the Howard County Board of Education as set forth in Section 3-701(f) violates the Maryland Constitution. Both parties have described two ways for selecting board members: election and appointment. Whether the selection process is violative of the Maryland Constitution turns on whether the student member is an elected member of the Board. The Court will first discuss whether the student member position fits squarely within the conception of an elected position.

Section 3-701(a)(1) states: "The Howard County Board consists of: (i) Seven *elected* members; and (ii) One *student* member." (emphasis supplied). This provision sets the student member apart from the seven elected members. Beyond this phrasing distinguishing between the two groups, there are major differences between the election of the seven elected Board members and the selection of the student member.

First, and the most obvious difference, the student member must be a junior or senior year student from a Howard County public high school. EDUC., § 3-701(f)(1). Second, the election results must be approved by the Board itself.[6] EDUC., § 3-703(f)(3). Third, the student member is selected outside of the normal election cycle. EDUC., § 3-701(f)(2). Fourth, the statute permits the runner-up to hold office if the selected student member is unable or ineligible to complete his or

---

[6] While the nomination process is not codified, the Plaintiffs explained that the selection process for the student member begins with nominations by principals, followed by delegates attending the Howard County Association of Student Counsels Convention selecting two student candidates, and finally an election among students grade 6 through 11 who attend Howard County Public Schools to choose between the two candidates. (Pls. Mem. 3.)

her term. EDUC., § 3-701(f)(4). Such provisions are uncharacteristic of elections carried out under the Election Law Article. *See* MD. CONST. art. XV, § 7 (establishing the date of all general elections in this State); *see also* MD. CODE ANN., ELECTION LAW, § 8-301 (setting forth the date of the statewide general election); *see also* EDUC., § 3-701(d) (establishing the term of the elected Howard County Board Members and the procedure for filling vacancies). Further, unlike the seven elected members, the student member's selection process, whereby registered voters over the age of eighteen are not involved in the selection, is not governed Article I, Section 1 of the Maryland Constitution or Section 8-806 of the Election Law Article, which provides for a general election for board of education members. The Court also notes that the student body 'election' does not meet the definition referenced by the Court of Appeals and first espoused by the Supreme Court in *Foster v. Love* for an election. The oft-quoted definition is "the 'combined actions of voters and officials meant to make a final selection of an office holder.'" *Capozzi*, 396 Md. at 78 (quoting *Foster v. Love*, 522 U.S. 67, 71 (1997)). The lack of involvement of election officials, namely the State or County Boards of Elections,[7] in the student member selection process is noteworthy.

It is presumed that the General Assembly knows the constitutional requirements for holding elective office. The requirements for eligibility for a student board member are clearly stated in Section 3-701(f)(1). These requirements are notably different from the requirements for holding elective office set forth in Article I, Section 12 of the Maryland Constitution. In contrast, the seven elected members are explicitly required to comply with the constitutional requirements for holding elective office. Subsection (b) of Section 3-701 mirrors the constitutional requirements for holding elective office, as it requires the seven elected members to be residents and registered

---

[7] *See* ELECTION LAW, § 2-202(b)(1) (stating that the local boards of election oversee the conduct of all elections held in its county); *see also* ELECTION LAW, § 2-102(b)(1) (stating that the State Board of Elections shall supervise the conduct of elections in the State).

voters of Howard County. The Court cannot conclude that the legislature intended to create a student member position that was elected and yet wholly incapable of complying with constitutional law. Rather, the Court's view is that the General Assembly explicitly set apart the student member of the board position and the selection process for same.

The student member selection process in Section 3-701(f) need not be considered in isolation. The Court interprets it within the context of the statutory scheme establishing local boards of education. *Snyder*, 435 Md. at 55. The General Assembly has seven statutes[8] within Title 3 of the Education Article establishing student members of the board with voting authority.[9] Four of these statutes colloquially refer to the selection process of student members as an election.[10]

Specifically, in Prince George's County, the student member, set apart in the statute from the nine elected members and four appointed members, is 'elected' by the delegates of the Prince George's County Regional Association of Student Governments. EDUC., § 3-1002. Similarly, in Baltimore County, the one student member, explicitly set apart from the seven elected members and four appointed members, is "elected by the middle and high school students of the county in accordance with procedures established by the Baltimore County student councils." EDUC., § 3-2B-01; EDUC., § 3-2B-05. The same is true in Harford County, where the student member is set apart from the elected and appointed county board members, specifically excluded from their definition of an elected member, and is 'elected' by high school students. EDUC., § 3-6A-01. Lastly,

---

[8] EDUC., § 3-2A-01 (Anne Arundel County); EDUC., §3-108.1 (Baltimore City); EDUC, § 3-1002 (Prince George's County); EDUC., §3-2B-05 (Baltimore County); EDUC., § 3-6A-01 (Harford County); EDUC., § 3-701 (Howard County); and EDUC., § 3-901 (Montgomery County).

[9] In Baltimore City, Prince George's County, Baltimore County, the student member of the board is expressly excluded from voting on school closings and reopenings. EDUC., §3-108.1(m)(4)(iii); EDUC., § 3-1002(g)(3)(ii); EDUC., § 3-2B-05(c)(4). In Harford County, the student member may not vote on issues related to the school calendar. EDUC., § 3-6A-01(g)(3)(iii)(15).

[10] As the Attorney General suggested in Opinion No. 80-030 regarding the Prince George's County statute, the use of the term "elect" is not dispositive. <u>The Honorable William R. McCaffrey</u>, Opinion No. 80-030, 1980 WL 127893 (Mar. 12, 1980).

in Montgomery County, the board consists of five elected members with a district residence requirement, two elected members without a district residence requirement, and one student member, who is elected through a complicated process of students voting for delegates who winnow the number of student candidates, and finally hold an election by all the middle and high school students to choose between the remaining two candidates. EDUC., § 3-901.

While none of these statutes are under attack, examining the entire statutory scheme sheds light on the intent of the General Assembly in drafting Section 3-701. The General Assembly knows how to establish an elective office and has chosen a different method of selection in the case of student members of the various boards of education who exercise voting authority. It appears that the General Assembly's decision to qualify the seven adult members with the term 'elected,' but not the student member, was deliberate and establishes an alternative selection process for the student member, thereby avoiding any constitutional challenges. *See State v. Falcon*, 451 Md. 138, 175 (2017) (stating that "when the General Assembly creates an office by statute, the General Assembly has the authority to designate the mode of appointment to that office"). The Court believes that the General Assembly used the words 'election' and 'vote' in a non-technical manner and as a way to efficiently describe the process whereby the student stakeholders express their opinion and select their representative.[11]

There is no provision in the Maryland Constitution that requires that board of education members be elected nor does the General Assembly lack the power to create non-elective positions. Therefore, Section 3-701 is a valid exercise of legislative authority. This interpretation also avoids the potential statute of limitations issue foreclosing a challenge of the qualifications of the current

---

[11] Certain stakeholders are prohibited from holding board positions, as board members vote on employee discipline, collective bargaining, and other similar matters. Unlike teachers, who are subject to the authority of the board, and therefore ineligible to hold a board position, the student member is expressly prohibited from casting votes on those kinds of issues. EDUC., § 3-114(g); EDUC, § 3-701(f)(7).

student member of the board, as the statute, found within the Election Law Article, does not apply to non-elective positions. *See* ELECTION LAW, § 12-202. Construing the position as not being subject to popular election also avoids any Fourteenth Amendment challenges, as the Supreme Court explained:

> [W]here a State chooses to select members of an official body by appointment rather than election, and that choice does not itself offend the Constitution, the fact that each official does not 'represent' the same number of people does not deny those people equal protection of the laws.

*Hadley v. Junior College Dist. of Met. Kansas City*, 397 U.S. 50, 58 (1970) (citing *Sailors v. Bd. of Ed. of Kent County*, 387 U.S. 105 (1967)); *see also Sailors*, 387 U.S. at 111 (stating that "[s]ince the choice of members of the county school board did not involve an election and since none was required for these nonlegislative offices, the principal of 'one man, one vote' has no relevancy"). While not binding authority, the Attorney General in Opinion 80-030 also suggested in a footnote that they "do not believe that any representational 'imbalance' alleged to exist within the process for choosing this student member [in Prince George's County] could be said to violate the constitutional rights of the general electorate to choose the nine 'elected' board members." The Honorable William R. McCaffrey, Opinion No. 80-030, 1980 WL 127893 at fn. 3 (Mar. 12, 1980).

While the Court finds that the student member position is not elected, thereby eliminating the constitutional concerns, the Court must clarify that it is not finding that the student member position meets the statutory definition of an 'appointment' as it relates to the boards of education in Section 3-108. Under Section 3-108, members of the county boards of education shall be appointed by the Governor, except in Baltimore City, Harford County, Caroline County, and for the counties listed in Section 3-114, which establishes elected boards of education. Appointed members are selected based on their character and fitness, but there is notably no age requirement. EDUC., § 3-108(b). Section 3-114 establishes elected boards for the nineteen counties listed but

permits a combination of appointed and elected positions in Baltimore City, Baltimore County, Caroline County, Harford County, and Prince George's County. Howard County is absent from this list of counties with hybrid methods. However, each of the hybrid counties contains not only student members, but also *separate* appointed members. All of these counties provide for direct appointment by a duly elected official(s), either the Governor, Mayor, County Executive, or County Council. Only one of these counties, namely Caroline County, does not also provide for a voting student member of the board.

Within the context of the statutory scheme, the Court cannot find that Howard County's student member is an appointed position in the same way that adult members are appointed. Rather, the Court views the student member as occupying its own role, selected neither through traditional appointment nor by popular election. All of the seven counties which provide for voting student members provide for their selection by other students, either by an 'election' whereby students vote directly for the candidate or through the county's student council/student congress, or some combination thereof. To put it differently, none fall within the ambit of Section 3-108 for appointed board members, Section 3-114(a) for elected members, or the hybrid models permitted under Section 3-114(b)-(f). Therefore, the Court, looking at the plain language of Section 3-701, does not find it to be ambiguous. Rather, looking at the statutory scheme as a whole, and the various processes by which the General Assembly has established to fill the seats of the boards of education, the Court finds that the General Assembly intended to create a third method of selection, specific to student members, whereby students hold the position and are selected in some fashion by other students.

It is not for this Court to determine whether it is prudent to have students with voting power on boards of education. Rather, this Court merely must determine whether it is legal. Neither party

has argued that the General Assembly is required to establish boards of education that are wholly elected. Such an argument would not be consistent with the Maryland Constitution or with Section 3-108 of the Education Article. Additionally, it has not been argued that having hybrid methods to select board members, whereby some members are appointed but others are elected constitutes impermissible vote dilution.

The Plaintiffs' assertion that the General Assembly lacks the authority to choose how to carry out its constitutional mandate to establish a system of free public schools other than through school boards is untenable. The Court of Appeals has already addressed the issue in *Chesapeake Charter, Inc. v. Anne Arundel County Board of Education*, where the Court unequivocally stated that "County school boards are creatures of the General Assembly."[12] 358 Md. 129, 135 (2000). The Court cannot find that Section 3-701(f) is unconstitutional. Furthermore, given that at least two jurisdictions, namely Prince George's County and Baltimore City provide for persons other than the Governor to select non-student board members, the Court cannot find that the use of alternative selectors is impermissible. Using those other than the Governor to select board members is patently constitutional. Article II, § 10 of the Maryland Constitution states that the Governor shall nominate . . . and "appoint all civil and military officers of the State, whose appointment, or election, is not otherwise herein provided for, *unless a different mode of appointment be prescribed by the Law creating the office.*" (emphasis supplied). As Section 3-701(f) is a law creating a different mode of selection for the student member position, someone

---

[12] At the hearing, the Plaintiffs mentioned that, although they were not making a separation of powers argument, that this is an executive agency and, when you have that, the General Assembly cannot withdraw from the authority of the executive. The Court of Appeals in *Chesapeake Charter, Inc.* explained, contrary to the Plaintiffs' argument, that "[a]though legally State agencies . . . [County school boards] are not normally regarded, for structural or budgetary purposes, as units within the Executive Branch of the State government." 358 Md. at 137. Further, *Schisler v. State*, a plurality opinion relied upon by the Plaintiffs, which involved the legislature attempting to exercise removal power, states that "the Legislature can by express provision in a prospective statute commit the appointment process to entities other than the Executive." 394 Md. 519, 584 (2006).

other than the Governor can select student members. This Court could locate no law curbing the General Assembly's creativity in divining the board member selection process. In *State v. Falcon*, which dealt with changes to a county school board nominating commission, the Court of Appeals explained:

> [T]his Court has historically recognized that, when the General Assembly creates an office by statute, the General Assembly has the authority to designate the mode of appointment to that office. . . . Stated otherwise, where the General Assembly has created the office by statute, the General Assembly "can modify, control or abolish it, and within these powers is embraced the right to change the mode of appointment."

451 Md. 138, 175 (2017) (quoting *Comm'n on Med. Discipline v. Stillman*, 291 Md. 390, 410 (1981)). The Court finds that *State v. Falcon* is controlling in light of the Court of Appeals' prior finding that school boards are statutory creatures. *Chesapeake Charter, Inc.*, 358 Md. at 135. The Court finds that the General Assembly's decision to create a selection process whereby students choose the student member of the board is not violative of the Maryland Constitution.[13]

### III.     The Exercise of General Governmental Power by Minors

The Court must now examine whether there is a constitutional impediment to vesting a minor with voting authority. The Plaintiffs assert that whether an official is appointed or elected, the official must be registered to vote. The Plaintiffs claim that there cannot be people holding office where they exercise general governmental power but ignore the Constitutional requirement that the individual must be eighteen years old and registered to vote to hold such an office.

The prerequisite for holding office of having registered to vote is found in Article I, Section 12 of the Maryland Constitution. In its entirety, Section 12 states:

---

[13] The Court does not rely on *McCurdy v. Jessup*, 126 Md. 318 (1915), cited by the Board, in making this conclusion, as that court did not conduct an in-depth analysis of the delegation issue when it determined that the legislature had the authority to require county commissioners to appoint to the game warden office a person recommended by a corporation. The *McCurdy* Court merely found that the selection process was not "manifestly in conflict with some provision of the Constitution." *Id.* at 38.

> Except as otherwise specifically provided herein, a person is ineligible to enter upon the duties of, or to continue to serve in, an *elective office* created by or pursuant to the provisions of this Constitution if the person was not a registered voter in this State on the date of the person's election or appointment to that term or if, at any time thereafter and prior to completion of the term, the person ceases to be a registered voter.

MD. CONST. art. I, § 12 (emphasis supplied). While the word appointment is used toward the end of the constitutional provision, it is preceded by a qualification that the provision applies to "an elective office." The Court also notes that the Section itself is entitled "Unregistered Voters Ineligible for *Elective* Office." *Id.* (emphasis supplied). As such, the Court cannot find, based on the plain reading of the provision, that Article I, Section 12 applies to appointments outside of replacing duly elected officials who cannot serve their term. *See* MD. CONST. art. XV, § 5 (vesting the General Assembly with the authority to provide by law for the replacement of officials unavailable to perform their duties); *see also Capozzi*, 396 Md. at 72 (citations omitted) (stating that the Court does not look past the "normal plain meaning of the language" if the constitutional provision is unambiguous).

Having determined that Article I, Section 12 does not set an age or voter registration requirement on non-elective officials, such a requirement must be found elsewhere for the Plaintiffs to prevail. After careful investigation, this Court could not find, nor could the Plaintiffs cite, either in the Maryland Constitution or within the Education Article, a requirement that non-elected members must be over the age of eighteen. The Plaintiffs asserted at the hearing that only adults can exercise general governmental power. It is the Court's view that the general governmental power argument has only been extended to elected officials. In reaching this decision, the Court considered the Supreme Court's decision in *Hadley v. Junior College District of Metropolitan Kansas City*, in which they explained:

> [I]n situations involving *elections*, the States are required to insure that each person's vote counts as much, insofar as it as practicable, as any other person's. We have applied this principle in congressional elections, state legislative elections, and local elections. The

consistent theme of those decisions is that the right to vote in an election is protected by the United States Constitution against dilution or debasement. While the particular offices involved in these cases have varied, in each case a constant factor is the decision of the government to have citizens participate individually by ballot in the selection of certain people who carry out governmental functions.

*Hadley*, 397 U.S. at 54 (emphasis supplied); *see also* The Honorable William R. McCaffrey, Opinion No. 80-030, 1980 WL 127893 (Mar. 12, 1980) (Richard Israel in the letter attached to the Attorney General's opinion, explained that only elections and not appointments are subject to the one-person, one-vote principle, which itself only applies where the elected official exercises general governmental powers). This Court has not found that the Plaintiffs' broad general governmental power argument or the more narrow suggestion that minors may not exercise such powers applies to non-elective positions. Absent specific guidance imposing an age requirement to exercise general governmental power, the Court will not read one into existence.

The General Assembly has decided, as a political matter, that it is appropriate to have a student member of the board with the authority to cast votes on specified issues before the board. The General Assembly, in the statutes providing for voting student members, has carved out areas where the student member cannot vote. Baltimore City, Prince George's County, Baltimore County, and Harford County all prohibit the student member from voting on school opening and closing.[14] That Howard County omitted such an exclusion has resulted in this litigation, but it does not render Section 3-701(f) unconstitutional.

## CONCLUSION

For the foregoing reasons, the Court finds that Section 3-701(f) is a valid exercise of the General Assembly's authority to determine the selection method for the members of the board of

---

[14] EDUC., §3-108.1(m)(4)(iii); EDUC., § 3-1002(g)(3)(ii); EDUC., § 3-2B-05(c)(4); EDUC., § 3-6A-01(g)(3)(iii)(15).

education and that said statute does not violate the Maryland Constitution. The Court will issue a declaratory judgment consistent with the findings herein.

Turning briefly to the issue of attorneys' fees, the Board expressed that it may seek fees under Maryland Rule 1-341. Such an award would require the Court to find that the Plaintiffs maintenance of the action was "in bad faith or without substantial justification." Md. Rule 1-341(a). The award of attorney's fees is "an extraordinary remedy, intended to reach only intentional misconduct." *Talley v. Talley*, 317 Md. 428, 438 (1989). While it is difficult to see how the Board would meet such a burden in this case, which involves complex statutory and constitutional interpretation, the Court will evaluate any such request along with any response thereto.

03/25/2021 2:34:30 PM

03/25/2021
Date

Richard S. Bernhardt, Judge
Circuit Court for Howard County

Entered: Clerk, Circuit Court for
Howard County, MD
March 25, 2021