IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| LISA M.F. KIM, et al., | : | |
| | : | |
| v. | : | Civil Action No. DKC 21-0655 |
| | : | |
| BOARD OF EDUCATION OF HOWARD COUNTY | : | |

**MEMORANDUM OPINION**

Plaintiffs Lisa M.F. Kim and William F. Holland filed this action against the Howard County Board of Education ("the Board") to challenge the selection process for the Student Member of the Board.  They claim that the process violates the Fourteenth Amendment's Equal Protection Clause and the First Amendment's Free Exercise Clause.  (ECF No. 1).  Mr. Holland is an adult resident of Howard County whose two children attend Howard County public schools.  (ECF No. 1, at 3).  Ms. Kim is also a Howard County resident; she is suing both as an individual and on behalf of her middle-school-age son, who attends a private Catholic school in the County.  (ECF No. 1, at 3).  Plaintiffs seek to represent a class "of all persons in Howard County who are in malapportioned school-board districts and who are prevented from voting for the Student Member . . . because they are not students in the Howard County Public Schools System in grades 6-11."  (ECF No. 6-1, at 2).

Currently pending are Defendant's motion to dismiss Plaintiffs' complaint, (ECF No. 18), and Plaintiffs' motion for class certification. (ECF No. 6).  The issues have been briefed and the court now rules, no hearing being necessary.  Local Rule 105.6.  Because the Student Member is not popularly elected, and because the Student Member statute is neutral and generally applicable, the motion to dismiss will be granted.  The motion for class certification will be denied.[1]

I.   **Background**

Under Maryland law, the Board of Education for Howard County consists of seven "elected members" and one Student Member.  Md. Code Ann., Educ. § 3-701(a)(1).  The seven elected members are chosen through popular votes open to the County's qualified voters: Two are chosen at-large by a county-wide vote and the other five

---

[1]    When the Defendant's motion to dismiss is granted, Plaintiff's motion for class certification becomes moot.  While a court must decide class certification issues "[a]t an early practicable time after a person sues," F.R.C.P. 23(b)(1), a defendant may "moot" the class certification issue by moving for—and obtaining—a favorable decision "before the district judge decide[s] whether to certify the suit as a class action." *Cowen v. Bank United of Tex., FSB*, 70 F.3d 937, 941 (7th Cir. 1995).  Indeed, federal courts often deny class certification motions as moot after granting a motion to dismiss. *See, e.g.*, *Smallwood v. Yates*, 235 F.Supp.3d 280, 282 (D.D.C. 2017) ("[T]he Court concludes that it must grant the defendants' motion to dismiss and thus deny the plaintiff's motion [for class certification] as moot."); *Longo v. Campus Advantage, Inc.*, 588 F.Supp.3d 1286, 1290 (M.D.Fl. 2022) (same).  Here, Defendant moved to dismiss (ECF No. 18) before opposing class certification (ECF No. 19), and it does not ask the court to decide the class certification motion before granting the motion to dismiss.

are chosen by district-wide votes to represent the County's five councilmanic districts.  Md. Code, Educ. § 3-701(a)(2).  These seven elected members are adult County residents who serve two-year terms and earn taxpayer-funded compensation.  Md. Code Ann., Educ. §§ 3-701(b)(1); 3-703(a).  As part of the Board of Education, they are vested with the authority to decide "educational matters that affect the count[y]," Md. Code Ann., Educ. § 4-101(a), including issues related to the administration of the Howard County Public School System, which educates around 60,000 students in 77 schools.  (ECF No. 1, at 2).

The Board's eighth member—the Student Member—is different.  The Student Member is a "regularly enrolled junior or senior year student from a Howard County public high school."  Md. Code Ann., Educ. § 3-701(f)(1).  The Student Member serves a one-year term starting each year in July and receives no compensation.  Md. Code Ann., Educ. § 3-701(f)(1)-(8).  The Student Member holds some power over the County's education policy, but the powers are far more limited than those of the Board's elected members.  Unlike the rest of the Board, the Student Member is barred from voting on certain issues, including "budgetary matters," "school construction," the "[a]cquisition and disposition of real property," "donations," the "[a]ppointment and promotion of staff," "collective bargaining," "employee discipline," "[s]tudent suspension," the "consolidation of schools," "transportation of

3

students," and several others.  Md. Code Ann., Educ. § 3-701(f)(7)(i)-(xiv).  The Student Member also may not attend a closed board meeting "addressing a matter on which [the student member] is prohibited from voting," unless a majority of the elected members "affirmative[ly]" invite the student member to do so.  Md. Code Ann., Educ. § 3-701(f)(6).

The Code contemplates that the process for filling the Student Member seat be overseen and approved by the Board and that "any student in grades 6 through 11 enrolled in a Howard County public school" be allowed to vote to elect the Student Member.  Md. Code Ann., Educ. § 3-701(f).  Pursuant to the Code, the Board has issued a policy specifying the procedures through which the Student Member is to be nominated and elected: through a school-run selection process that incorporates the preferences of school principals, school advisors, and certain students.  (ECF No. 1-2).  Any interested student must apply to his or her school and undergo a school advisor's review.  Each school's principal convenes a selection committee comprised of the principal, a student government advisor, and three students chosen by the principal. The principal's committee then reviews student applications and selects a handful of students to attend a county-wide convention at which the chosen students vote to narrow the field to two finalists.  (ECF No. 1-2, at 3).

After the convention, the two finalists submit their "campaign materials" to school employees, who "arrange[]" for the students to "view" them.  (ECF No. 1-2, at 4).  Toward the end of the school year, 6th through 11th grade students throughout the Howard County Public School System vote between these two finalists.  (ECF No. 1-2, at 2).  Once those votes are tallied, the Superintendent decides whether to "certify" that the finalist who received the most votes complied with all selection "procedures" and "rules," which themselves are created by school employees "as necessary."  (ECF No. 1-2, at 4).  The student who both obtains the most votes and receives the Superintendent's certification becomes the Student Member. (ECF No. 1-2, at 4).

Around the same time this suit was filed, a different set of plaintiffs sued the Board in Maryland state court, alleging that the Student Member selection process violated the Maryland Constitution.  *Spiegel v. Bd. of Ed. of Howard Cnty.*, Circuit Court for Howard County, Case No. C-13-CV-20-000954.  An appeal in that case reached the Court of Appeals of Maryland.  Noting that the "decision in that case . . . may well affect the analysis" in this one, (ECF No. 32), this court stayed proceedings until the Court of Appeals of Maryland rendered a decision.  (ECF No. 37).  Several months ago, that court held that "the provisions of section 3-701 of the Education Article concerning the student member position on the Howard County Board of Education do not run afoul of the

Maryland Constitution." *Spiegel v. Bd. of Ed. of Howard Cnty.*, 480 Md. 631, 650 (2022). In reaching that conclusion, the court reasoned that Maryland law created two classes of Board members, one called "member" and the other called "student member," that the General Assembly chose not to use the general election process to select the student member, and that it acted within its discretion in doing so. *Id.* at 643-650. Both parties have since filed supplemental briefs addressing the impact of the state court decision on this case. (ECF Nos. 40, 41).

## II. Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). A plaintiff's complaint need only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." A Rule 8(a)(2) "showing" still requires more than "a blanket assertion[] of entitlement to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007), or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).

## III. Analysis

Plaintiffs claim that the Student Member selection process violates (1) the Fourteenth Amendment's Equal Protection Clause and (2) the First Amendment's Free Exercise Clause.

### A.   Equal Protection Clause

Plaintiffs' Equal Protection Clause claims fall into two categories: (1) claims resting on the "one[-]person, one[-]vote" principle, *see Reynolds v. Sims*, 377 U.S. 533, 558 (1964), and (2) claims resting on the Supreme Court's holding in *Bush v. Gore*, 531 U.S. 98 (2000).   Plaintiffs fail to state a plausible Equal Protection Clause claim under either theory.

#### 1.   One-Person, One-Vote

First, Plaintiffs allege that the Student Member selection process "grant[s] greater voting strength" to students than to adults and that the Student Member effectively represents a "malapportion[ed]" electoral district comprised of Howard County public school students.   (ECF No. 1, at 8-11, 13-14).   As Plaintiffs later explain in their response to Defendant's motion to dismiss, (ECF No. 20-1, at 22-29), these claims rest on the Fourteenth Amendment's one-person, one-vote principle, which requires any law creating unequal "voting power" in a popular

election to survive "careful judicial scrutiny." *Reynolds*, 377 U.S. at 558, 581.  These claims will be dismissed because one-person, one-vote applies only to school board members chosen by popular election, and the Student Member selection process is not a popular election.

The Constitution does not confer a right to vote for "local officers" such as county school board members. *Sailors v. Bd. of Ed. of Kent Cnty.*, 387 U.S. 105, 108 (1967).  A school board is a "subordinate . . . instrument[] created by the [s]tate to . . . carry[] out . . . state governmental function[s]," and a state "has vast leeway in the management of its internal affairs." *Id.* at 108-09.  Because a state need not hold a school board election in the first place, the one-person, one-vote principle applies to a school board seat only when the state chooses to fill that seat through a "popular election."  *Hadley v. Junior Coll. Dist. of Metro. Kan. City*, 397 U.S. 50, 56 (1970).[2]

In a popular election, a local officer is chosen "by the people"—that is, by the county's "qualified voter" base.  *Id.* at 55-56.  A state or local government may hold a "direct[]" popular election, *see Sailors*, 387 U.S. at 109 n.6, in which "all . . . qualified voter[s]" "participate individually by ballot," *see*

---

[2] *See also Vander Linden v. Hodges*, 193 F.3d 268, 272, 275 (4th Cir. 1999) (noting the "general rule" that the one-person, one-vote principle applies to a local office only when a state holds a "popular election") (internal quotations omitted).

*Hadley*, 397 U.S. at 54-55, or where the ballot is otherwise open to "all" such voters "with some exceptions," *see Salyer Land Co. v. Tulane Lake Basin Water Storage Dist.*, 410 U.S. 719, 730 (1973). Or it may hold an "indirect[]" popular election, in which representatives of the qualified voters choose the local officer "in accord with the [qualified voters'] expressed preferences." *See Sailors*, 387 U.S. at 109 n.6.

By contrast, if a state or local government does not hold a popular election—that is, if a local officer is effectively appointed by a governmental entity rather than "the people"—then one-person, one-vote does not apply. *Id.* at 107 n.2, 109 n.6, 111. For example, one-person, one-vote does not apply when a local officer is appointed by the governor or the legislature. *Id.* at 109. It also does not apply when the government selects a group of "delegates" who in turn vote to fill the school board seat themselves. *Id.* at 109 n.6. This choice-by-state-delegate system is "basically appointive rather than elective" because the delegates are not meant to represent the "preferences" of the county's qualified voter base, but rather to "carry[] out" the "state governmental function" of filling the school board. *See id.* at 106, 109 n.6. Thus, one-person, one-vote does not apply because the local officer is "basically" selected by the governmental entity (through its chosen delegates) rather than "the people." *Id.* at 107 n.2, 109 n.6.

Here, one-person, one-vote does not apply because the Student Member is not popularly elected: The two Student Member candidates are chosen by delegates and the candidate who receives the most votes from students in grades 6 through 11 enrolled in the public schools becomes the Student Member.  The Student Member selection process is not a direct popular election because the Student Member is not chosen through a vote "open to all . . . qualified voter[s]" in Howard County, *see Hadley*, 397 U.S. at 54-55, or to "all" such voters "with some exceptions," *see Salyer*, 410 U.S. at 730. Rather, certain middle and high school students—nearly all of whom are *not* qualified voters—select the Student Member through a process that is itself tightly controlled by the Board.  The process is also not an indirect popular election because the students "need not cast their votes in accord with the expressed preferences" of Howard County's qualified voter base. *See Sailors*, 387 U.S. at 109 n.6.

The Board's ample control over the selection process likewise shows that the Student Member is effectively chosen by the Board rather than "the people."  While students in certain grades may eventually vote between two finalists, the Board (through its school employees) handpicks the candidates who may become finalists, chooses the subgroup of students that decides who those finalists are, controls the distribution of campaign messages, and decides whether to approve the winner.  (ECF No. 1-2, at 3-4).

10

Indeed, as Plaintiffs themselves assert, school employees "control every aspect of determining who obtains the nomination for the Student Member seat." (ECF No. 1, at 13). Far from inviting the participation of Howard County's qualified voter base—as popular elections generally require—nearly all qualified voters are removed from the selection process and instead near-dispositive power is vested in Board employees and certain selected students. That end-to-end Board control shows that the Board has not relinquished its inherent authority to choose the Student Member. Rather, it has exercised that authority to create a "basically appointive" selection system through which the Board's preferred delegates choose the Student Member.

In a similar case, the Supreme Court held that one-person, one-vote does not apply when County school board seats are filled by delegates chosen by local boards, rather than through a popular election meant to capture the qualified voter base's "expressed preferences." *See Sailors,* 387 U.S. at 106-111. The Michigan public educational system included local school districts, whose boards were elected by popular votes of the residents of the districts, and a county school board. The five-member county board was "elected" by delegates from the local districts, with each district getting one vote, regardless of size or population. The Court held that "the principle of 'one[-]man, one[-]vote' ha[d] no relevancy" because filling the county school board was not an

11

election.   Indeed,  the  selection  process  was  not  a  "direct[]"
popular  election  because  it  was  open  only  to  the  chosen
"delegates,"  not  to  a  county-wide  "popular  vote."   *Id.* at 106, 107
n.1,  109 n.6.   It  was  also  not  an  "indirect[]"  popular  election
because  the  delegates  were  not  bound  to  vote  "in  accord  with"  the
qualified  voting  base's  preferences.   *Id.* at 109 n.6.   Thus,  even
though  the  process  technically  involved  an  "electorate"  comprised
of  delegates  that  "cast . . . votes,"  it  was  still  not  a  *popular*
election[]"  subject  to  the  one-person,  one-vote  principle.   *Id.* at
106, 107 n.2, 109 n.6 (emphasis added).

The  same  reasoning  applies  here.   As  in  *Sailors*,  the  state
has  chosen  to  provide  for  the  filling  of  a  county  school  board
seat  without  regard  for  the  "expressed  preferences"  of  the  county's
qualified  voter  base.   As  in  *Sailors*,  the  state  has  delegated
certain  people  to  participate  in  a  state-controlled  selection
process  rather  than  holding  a  county-wide  popular  vote.   Thus,
here,  as  in  *Sailors*,  one-person,  one-vote  does  not  apply.

Seeking  to  evade  this  conclusion,  Plaintiffs  seem  to  suggest
that  one-person,  one-vote  applies  because  the  selection  process
bears  some  hallmarks  of  an  "election"  as  that  term  is  commonly
understood—i.e.,  a  "body  politic"  "votes"  to  fill  a  "higher
office."  (ECF No. 41, at 14).   Thus,  Plaintiffs  argue,  the  process
fits  the  "[d]ictionary  defin[ition]"  of  an  election.   (ECF 41, at
13-14).   That  is  irrelevant.   That  a  selection  process  might  be

called an "election" in common parlance does not mean that it is a "popular election" subject to one-person, one-vote, as defined by Supreme Court precedent.   Indeed, the selection process in *Sailors* would no doubt meet any dictionary's definition of "election"—it involved an "electorate" that "cast . . . votes." 387 U.S. at 109 n.6.   But the Supreme Court still held that one-person, one-vote did not apply.   *Id.* at 109 n.6.

Plaintiffs argue that the Student Member selection process is more like the electoral process that the Supreme Court held unconstitutional in *Kramer v. Union Free Sch. Dist. No. 15*, 397 U.S. 621 (1969).   (ECF No. 41, at 8-10).   That comparison is inapt. In *Kramer*, a city chose its entire school board through a "popular vote" open to all residents who were "qualified by age and citizenship" to vote in other state elections, but it created "additional requirements" related to property ownership that excluded "some otherwise qualified" voters from the ballot.   397 U.S. at 625-26, 627 n.7.   The Court held that the city violated the Equal Protection Clause because "the school board positions [were] filled by [an] election" in which "some otherwise qualified city electors [were] precluded from voting."   *Id.* at 627 n.7.

Thus, while *Sailors* held that one-person, one-vote does not apply when a state forgoes a popular election in favor of a choice-by-state-delegate system, *Kramer* clarified that once a state *does* hold an election open to its qualified voters more broadly, it

13

cannot exclude "some" of those voters from the ballot, *see* 397 U.S. at 627 n.7.  As the Supreme Court explained a few years later, one-person, one-vote applied in *Kramer* because the state had "opened the franchise to all [qualified voters] . . . with some exceptions." *See Salyer*, 410 U.S. at 730 (citing *Kramer*, 397 U.S. at 632-33).

This case is different: Howard County does not choose the Student Member through a "popular vote" open to all qualified Howard County voters with some exceptions.  Rather, state law has provided for a selection process through which chosen delegates—certain students—decide the Student Member.  Indeed, unlike in *Kramer*, where most qualified voters were "franchised" while only "some" were excluded, 397 U.S. at 627 n.7, Maryland has delegated selection power to a group comprised almost entirely of people who are *not* otherwise qualified to vote: 6th through 11th grade students.

Plaintiffs highlight the fact that the selection process is open to a few people who *are* qualified voters: any 18-year-old 11th graders who are "held a grade . . . behind" or who joined local schools "after living in another country."  (ECF No. 20-1, at 26).  But the Supreme Court has never held that one-person, one-vote applies to a choice-by-state-delegate system in which the group of delegates happens to include some qualified county voters.  Indeed, if that were true, the Court likely would have reached a different

result in *Sailors*.  There, the delegates who chose the county-wide school board were selected from "local school boards" across the county.  387 U.S. at 106.  Because those delegates already held county government positions, it is possible—perhaps likely—that they were qualified county voters themselves.  Yet, as Defendant correctly points out, the Court never analyzed whether the delegates resided in the county or were qualified to vote there.  (ECF No. 22, at 10).[3]  Thus, when the so-called "electorate" tasked with choosing a local officer includes only a narrow pool of state-chosen delegates, as in *Sailors*, and not the county's entire "qualified voter" base with some exceptions, as in *Kramer*, a delegate's status as a qualified voter is not relevant in deciding whether one-person, one-vote applies.[4]

---

[3] *See also Butts v. Aultman*, No. 4:18CV001-NBB-JMV, 2018 WL 6729987, at *4 (N.D.Miss. Dec. 21, 2018) ("The Court in *Sailors* did not analyze the residency of the appointed members to determine whether the structure of the board was one[-]person, one[-]vote compliant."), *aff'd,* 953 F.3d 353 (5th Cir. 2020).

[4] Several federal courts have also held that one-person, one-vote does not apply when a state delegates selection power to a group of citizens that happens to include some qualified voters. *See Benner v. Oswald*, 444 F.Supp. 545, 560-61 (M.D.Pa. 1978) (one-person, one-vote did not apply when a public university trustee was chosen by a vote of 14,000 school alumni across the state because the state did not open the vote to all or most people within "a certain geographical district who were otherwise qualified to vote in a general election"), *aff'd,* 592 F.2d 174, 183 (3d Cir. 1979) (affirming that the alumni vote was not "a general public election"); *Bradley v. Work*, 916 F.Supp. 1446, 1456 (S.D.Ind. 1996) (one-person, one-vote did not apply when a county judicial nomination commission was chosen by a vote of licensed attorneys in the county because the vote was not "a popular

The recent decision of the Court of Appeals of Maryland upholding the Student Member statute against a challenge under the Maryland constitution also supports this result and renders irrelevant Plaintiffs' argument that some state statutes, state documents, and state employees have called the Student Member an "elected" official.   (ECF No. 20-1, at 14-17).   In *Spiegel*, the court held that the Student Member is not an elected official under the Maryland constitution.   480 Md. at 643-45.   In so holding, the court relied on and applied federal precedent: It noted that the federal constitution permits a state to choose school board members without holding a "popular election."   *Spiegel*, 480 Md. at 644-45 (quoting *Hadley*, 397 U.S. at 58-59).   The court thus reasoned that Maryland did not violate "constitutional protections of voting rights" because the state chose "not to use the general election process to select the student member," "as expressly permitted by" Supreme Court precedent.   *Id.*   "A State's highest court is unquestionably the ultimate expositor of state law."   *Riley v. Kennedy*, 553 U.S. 406, 425 (2008) (cleaned up).   Thus, it does not now matter what state lawmakers and employees called the Student Member before the Court of Appeals weighed in.   Assuming it is relevant under the federal constitution whether a local official is considered "elected" under state law, Maryland has decided that

---

election," which generally occurs where "all registered voters meeting the age and residency requirements may vote").

the Student Member is "not . . . elect[ed]." *Spiegel*, 480 Md. at 644-45.

Plaintiffs are also wrong to argue that one-person, one-vote applies to the Student Member simply because the school board's other seven members are elected. Indeed, the Constitution permits a school board with "combined . . . elective and appointive systems." *Sailors*, 387 U.S. at 111. And when a state adopts this "blended school board structure," "Supreme Court precedent does not compel the court to scrutinize the relative power" of the elected and non-elected seats. *Butts v. Aultman*, 953 F.3d 353, 360 (5th Cir. 2020). Rather, the elected members must be chosen through a process compliant with one-person, one-vote, while the appointed members need not be. *Id.*

Plaintiffs do not allege that the elected school board members are chosen in a way that violates one-person, one-vote. Rather, they claim that the Student Member's addition to the board causes malapportionment by giving students more "representation" than adults. (ECF No. 1, at 13-14). But a local official who is not popularly elected does not "represent" *anyone*—rather, the official is "basically appoint[ed]" by the governmental entity. *Sailors*, 387 U.S. at 109. And because "the voters d[id] not select" the official, it is unclear which voters the official "is supposed to represent" in the first place. *See Cunningham v. Municipality of Metro. Seattle*, 751 F.Supp. 885, 894 (W.D.Wash. 1990). Thus, a

non-elected member "should not be counted" in deciding whether a school board over-represents certain voters. *See Butts*, 953 F.3d at 360 (internal quotation omitted).[5]

Nor are Plaintiffs right that granting the Board's motion to dismiss would make it easier for states to engage in invidious discrimination against disfavored voters, (*see* ECF No. 20-1, at 18-19), as Texas once did in the White Primary Cases. *See, e.g.*, *Nixon v. Herndon*, 273 U.S. 536, 540 (1927). The popular election requirement is merely a prerequisite for a one-person, one-vote claim—it is not a hurdle to *other* constitutional claims.[6] Even when a state forgoes a popular election, it still "cannot . . . manipulate" its political rules "so as to defeat a federally protected right." *Sailors*, 387 U.S. at 108.

A selection process that discriminates based on an impermissible factor can be challenged under the Constitution whether or not a popular election occurred. Indeed, in a case where a state created an appointive school board system for the

---

[5] *Cf. Fahey v. Laxalt*, 313 F.Supp. 417 (D.Nev. 1970) (3-judge court) (holding that a school board violated one-person, one-vote because the board's six elected members represented unequal constituencies, and not considering the board's two non-elected members in the one-person, one-vote analysis).

[6] *See also Butts*, 2018 WL 6729987, at *4 ("*Sailors* and its progeny do not stand for the position that appointive systems 'automatically' pass muster under all federal laws–simply that they do not implicate one[-]person, one[-]vote . . . [such a] system conceivably could run afoul of constitutional principles if, say, a plaintiff could establish . . . an impermissible discriminatory purpose, for example, racial animus.").

alleged purpose of diluting Black voting power, the United States Court of Appeals for the Fourth Circuit applied the Equal Protection Clause to examine the system's constitutionality. *See Irby v. Va. State Bd. of Elections*, 889 F.2d 1352 (4th Cir. 1989).

### 2. *Bush v. Gore*

Plaintiffs also raise an Equal Protection Clause claim based on *Bush v. Gore*, 531 U.S. 98 (2000). They contend that "*Bush v. Gore* instructs that . . . whatever action constitutes a fully effective vote for one voter in one part of a jurisdiction must likewise fully effectuate a vote for another voter in that same jurisdiction." (ECF No. 20-1, at 13). Thus, they argue, the statute here violates the Equal Protection clause because the Student Member selection process is "vastly different" than the election procedures for the elected school board members. ECF No. 20-1, at 10).[7]

*Bush v. Gore* does not apply here. That case involved "the special instance of a statewide recount under the authority of a

---

[7] Plaintiffs do not mention *Bush v. Gore* in their complaint—they merely allege that the Equal Protection Clause has been violated because "County Employees Control [the] Nomination Process of an Elected Official" and the "Student Member Election Procedures Are Contrary to State Election Statutes," without specifically articulating to which Equal Protection Clause precedents those allegations relate. (ECF No. 1, at 11-13). In their response to Defendant's motion to dismiss, Plaintiffs clarify that these allegations are meant to show that the County has created "differing election procedures" in violation of the rule set out in *Bush v. Gore*. (ECF No. 20-1, at 10, 12-13).

single state judicial officer" within a state whose electors would decide a contested presidential election.   531 U.S. at 109.   In that unique context, the Court reasoned that the Equal Protection Clause requires some "rudimentary" "uniformity" in statewide "recount procedures."   *Id.*   The Court also clarified that its holding was "limited to the present circumstances" because "the problem of equal protection in election processes generally presents many complexities."   *Id.*   And it reaffirmed that, to address those complexities, "local entities . . . may develop different systems for implementing elections."   *Id.*

That is what Howard County has done: It has implemented a "different system[]" for choosing the Student Member than the system used for choosing the rest of the Board.   It makes sense that the Student Member is chosen differently because the student member's role differs from that of other Board members in numerous ways: The student member is paid less, has far less authority, attends fewer meetings, and serves a shorter term, just to name a few.   *See* Md. Code Ann., Educ. § 3-701.   Adopting Plaintiffs' position would require extending *Bush*'s "uniformity" principle beyond its unique facts to a new context—and that is exactly what the Court instructed lower courts *not* to do when it "limited" its holding to that case's "special . . . circumstances."   *Id.*

An *en banc* panel of the United States Court of Appeals for the Fourth Circuit recently read *Bush* the same way.   *See Wise v.*

20

*Circosta*, 978 F.3d 93, 100 n.7 (4th Cir. 2020) (en banc).  In *Wise*,
the Fourth Circuit explained that *Bush v. Gore* has "limited
precedential value" because the Supreme Court cabined its
"consideration . . . to the . . . circumstances" before it.  *Id.*
(quoting *Bush*, 531 U.S. at 109).  The Fourth Circuit noted it would
"*treat*[] [*Bush*] as binding" so that it could deny an injunction
requested by a party raising a *Bush v. Gore* claim.  *See id.* at 100
n.7, 103 (emphasis added).  Several other federal courts have
likewise either questioned *Bush*'s precedential value or refused to
extend it beyond its facts.  *See LULAC v. Abbott*, 951 F.3d 311,
317 (5th Cir. 2020) (questioning whether "*Bush v. Gore* has
precedential value" given the Supreme Court's "express
pronouncement" that its "consideration was limited to the present
circumstances") (cleaned up); *Stein v. Thomas*, 672 Fed.App'x 565,
569 (6th Cir. 2016) (calling *Bush v. Gore* "non-precedential");
*Wyatt v. Dretke*, 165 Fed.App'x. 335, 340 (5th Cir. 2006) ("[O]n its
face, the *Bush v. Gore* holding is limited to the facts at issue
there—the 2000 presidential election.").[8]  At best, *Bush* applies
only in "special . . . circumstances" not present in this case.

---

[8] *See also United States v. Nosal*, 844 F.3d 1024, 1053 n.8
(9th Cir. 2016) (Reinhardt, J., dissenting on other grounds)
(calling *Bush v. Gore* "a ticket for one train only") (quoting Linda
Greenhouse, *Thinking About The Supreme Court After Bush v. Gore*,
35 Ind. L. Rev. 435, 436 (2002)).

531 U.S. at 109.   Thus, Plaintiffs' claim based on *Bush v. Gore* will be dismissed.

### B.   Free Exercise

Plaintiffs argue that the Student Member selection process violates the First Amendment's Free Exercise Clause because it bars certain students from voting for the Student Member "solely because they attend a religious school or are homeschooled for religious reasons."   (ECF No. 1, at 15).   This claim will be dismissed because Plaintiffs have not plausibly alleged that the Student Member statute burdens religion—and even if it did, the law is neutral and generally applicable.

As an initial matter, the Free Exercise Clause does not apply when the government does not "burden[] . . . religious exercise." *Fulton v. City of Philadelphia*, 141 S.Ct. 1868, 1876 (2021).   The government burdens religious exercise when it directly "prohibit[s]" or "penal[izes]" religious conduct, *see Carson v. Makin*, 142 S.Ct. 1987, 1996 (2022) (internal citations omitted)— for example, if it "prohibit[s] bowing down before a golden calf," *see Emp't Div., Dept. of Human Res. of Ore. v. Smith*, 494 U.S. 872, 878 (1990).   The government can also burden religious exercise if it "indirect[ly] coerc[es]" someone into forgoing religious conduct to obtain a desirable public benefit, *see Carson*, 142 S.Ct. at 1996 (internal citations omitted)—for example, if it forces a church to "renounce its religious character" to qualify for public

funds, *see Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S.Ct. 2012, 2024 (2017).

Here, the structure of the Howard County Board of Education and its Student Member does neither.  It does not prohibit or penalize religious conduct because it does not bar students from attending religious schools or punish them for doing so.  And while Plaintiffs argue that the Student Member statute coerces religious students to "forego their religious education and enroll in [public school]," (ECF No. 20-1, at 31), it is unclear how it could do so. Indeed, nothing about the Student Member's mere existence encourages a religious student to choose public school over private school.

Plaintiffs allege that religious students have an interest in choosing the Student Member because they "are affected by decisions of the [Howard County School] Board, such as the transportation of Catholic school students on school busses operated by the Board." (ECF No. 1, at 15).  It may well be true that the *elected* members of the School Board sometimes make decisions affecting private school students.  But the Student Member wields no such power—the student member is statutorily barred from voting on nearly every issue that has ramifications outside the public school system (and even on most issues that are impactful within that system).  Md. Code Ann., Educ. § 3-701(f)(7).  For instance, while Plaintiffs allege that the Board makes transportation decisions, the Student

Member may not vote on matters related to the "transportation of students." Md. Code Ann., Educ. § 3-701(f)(7)(vi). The student member also cannot vote on "school construction," the "[a]cquisition and disposition of real property," "donations," "budgetary matters," "[a]ppointment and promotion of staff," "collective bargaining," and more than a dozen other issues. Md. Code Ann., Educ. § 3-701(f)(7)(i)-(xiv).

Moreover, even if this statute did burden religious exercise, a law that "incidentally burden[s] religion" does not violate the Free Exercise Clause if it is "neutral and generally applicable." *Fulton*, 141 S.Ct. at 1876.[9]  Indeed, the Fourth Circuit has reasoned that "generally applicable and religion-neutral laws virtually never violate the Free Exercise Clause." *Brzonkala v. Va. Polytechnic Inst. and State Univ.*, 169 F.3d 820, 881 (4th Cir. 1999) (en banc). This law is no exception.

---

[9]  Plaintiffs argue that this law does not create an "incidental burden" because "[t]he denial of the right to vote has never been described in the history of this country as an 'incidental burden.'" (ECF No. 20-1, at 31). That argument misunderstands the case law. The incidental burden inquiry asks whether penalizing religious exercise is "the object of the [law]" or a mere "incidental effect." *See Smith*, 494 U.S. at 878. Thus, the question is whether the law was *intended* to burden religion—and Plaintiffs do not allege that the Student Member statute was intended to do so. What is more, the Free Exercise Clause is concerned with whether a law incidentally burdens *religion*, not voting rights. *Id*. Of course, as explained above, this statute does not burden voting rights either.

First, the Student Member statute is neutral.  A law is neutral if it operates "without regard to whether . . . conduct is religiously motivated or not." *Hines v. S.C. Dept. of Corr.*, 148 F.3d 353, 357 (4ᵗʰ Cir. 1998).  That is true here: The Student Member statute is neutral because it operates "without regard" for any student's or parent's religious motivations. *Hines*, 148 F.3d at 357.  The law is concerned not with *why* a student attends a certain school but with whether the student attends a school within the Student Member's jurisdiction.  If the student does, he or she may help select the Student Member.  If the student does not, he or she may not.  Religious beliefs are irrelevant.

Second, the Student Member statute is generally applicable. A statute is generally applicable if it applies the same "across-the-board" standard to all people within its scope. *Smith*, 494 U.S. at 884.  Meanwhile, a law is not generally applicable if it creates "a system of individual exemptions," such as by exempting certain people from statutory requirements for "good cause" or at a state official's "sole discretion." *Fulton*, 141 S.Ct. at 1877-778.  No such exemptions exist here.  Rather, public school students participate and private school students do not, regardless of the type of private school they attend.  Thus, the Student Member statute is both neutral and generally applicable, and whatever incidental burden it may place on religion does not render it unconstitutional.

Resisting this conclusion, Plaintiffs compare this case to two recent Supreme Court cases involving religious exclusions from state funding programs: *Trinity Lutheran v. Comer*, 137 S.Ct. 2012 (2017), and *Espinoza v. Mont. Dep't of Revenue*, 140 S.Ct. 2246 (2020).  That comparison is inapt.  In each of those cases, a state created a public grant program through which qualified applicants could obtain government funds, but it explicitly barred those funds from being used by religious entities or for religious purposes. *Trinity Lutheran*, 137 S.Ct. at 2021; *Espinoza*, 140 S.Ct. at 2260. The laws at issue in those cases violated the Free Exercise Clause because they "expressly discriminate[d] on the basis of religio[n]"—that is, they "disqualif[ied] otherwise eligible [funding] recipients from a public benefit solely because of their religious character." *Espinoza*, 140 S.Ct. at 2255, 2262 (quoting *Trinity Lutheran*, 137 S.Ct. at 2021).  But here, the Student Member statute does not "expressly discriminate" on the basis of religion— indeed, the law does not even *mention* religion.  Simply put, Plaintiffs are not excluded from the Student Member selection process "solely" (or at all) because of their religious beliefs— rather, they are excluded because they do not attend public schools.

At its core, Plaintiffs' claim seems to rest on the assertion that the Free Exercise Clause bars a state from opening a program to public schools and not private ones because doing so

26

discriminates against "religious choices in education." (ECF No. 20-1, at 30). But the Supreme Court has never said that a state must treat public and private schools identically, or that the Free Exercise Clause bars a state from differentiating between the two. Much the opposite: Just this year, the Court noted that public and private schools "are different by definition" and that a "'a State need not subsidize private education.'" *Carson*, 142 S.Ct. at 1997, 1999 (quoting *Espinoza*, 140 S.Ct. at 2255). Thus, a Free Exercise issue arises not when a state opens a program only to its "public school system," but when it provides benefits to "private *secular* [schools]" and not similarly-situated "private *religious* schools." *Id.* at 1994, 1999, 2000 (emphasis added). Nothing like that has happened here.

## C. Conclusion

Because the Student Member is not popularly elected, and because the Student Member statute is neutral and generally applicable, all of Plaintiffs' claims fail and the motion to dismiss will be granted.

                              /s/
        _____
                              DEBORAH K. CHASANOW
                              United States District Judge